IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| KO OLINA DEVELOPMENT, LLC, ) a Delaware limited liability company, ) | CIV. NO. 09-00272 DAE-LEK |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| CENTEX HOMES, a Nevada general ) partnership, JOHN DOES 1-20; ) JANE DOES 1-20; DOE ) CORPORATIONS and OTHER ) ENTITIES 1-20, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

ORDER GRANTING IN PART AND DENYING IN PART
KOD'S MOTION FOR SANCTIONS

Pursuant to Local Rule 7.2(d), the Court finds this matter suitable for

disposition without a hearing.  After reviewing the motion and the supporting and

opposing memoranda, the Court **GRANTS IN PART AND DENIES IN PART**

KOD's motion for sanctions.  (Doc. # 264.)

BACKGROUND

The parties are familiar with the facts of this case and the Court

recounts only those facts pertinent to disposition of the instant motion.  On

December 23, 2004, Plaintiff Ko Olina Development, LLC ("KOD") and its

affiliates entered into a purchase and sale agreement with Defendant Centex

Homes ("Centex") regarding development of land.  On or about September 29,

2006, KOD and Centex presented a letter of intent to Ritz-Carlton to operate a

luxury residential condominium.  Ultimately, for reasons that are disputed between

the parties, negotiations between KOD, Centex, and Ritz-Carlton were

unsuccessful and the project did not move forward.

On October 16, 2009, KOD filed a Second Amended Complaint

("SAC").  (Doc. # 87.)  The gravamen of the SAC pertains to certain easements

appurtenant to the Commercial Apartments on the property, described as limited

common elements ("limited common elements" or "LCE"), and exclusive rights to

control the LCE.

The instant motion pertains to a package of materials, termed the

"Eller Documents," that allegedly accompanied a presentation given to Timothy

Eller, Centex's former CEO, regarding the potential deal with Ritz-Carlton.  (Doc.

# 264.)  KOD contends that the Eller Documents are highly relevant and

potentially case determinative, but were not turned over to KOD during discovery.

The discovery process in this case has been the subject to two relevant

orders to compel.  On December 16, 2009, Magistrate Judge Leslie Kobayashi

2

issued an order granting KOD's motion to compel production of documents from Centex.  (Doc. # 110.)  This compel order included any and all non-privileged documents and communications regarding KOD's right to purchase the Commercial Apartments and the right to the LCEs.  (Id. at 5-6.)  On April 30, 2010, Magistrate Judge Kobayashi again issued an order granting KOD's motion in part and compelling discovery from Centex.  (Doc. # 214.)  The Court ordered Centex to produce a Rule 30(b)(6) witness to testify as to the information package that was sent to Eller.  Centex was further required to provide copies of non-privileged documents and communications between Sloan and Eller.  Magistrate Judge Kobayashi found that "this Court granted[] a motion to compel related to correspondence between Mr. Eller and Mr. Sloan, and the information package, but [Centex] failed to produce these documents prior to the taking of Mr. Sloan's deposition."  (Id. at 2.)  Magistrate Judge Kobayashi concluded that Centex had failed to comply with the Court's prior discovery orders, and that KOD was entitled to reasonable attorney's fees and costs.  (Id.)

On June 29, 2010, KOD filed the instant Motion for Sanctions.  (Doc. # 264.)  KOD claims that Centex has failed to comply with the discovery orders,

and that certain testimony offered by Centex's representatives is self-contradictory.

On July 6, 2010, Centex filed its Opposition.  (Doc. # 268.)  On July 8, 2010, KOD

filed its Reply.  (Doc. # 272.)

## STANDARD OF REVIEW

Courts have wide discretion to impose appropriate sanctions under

Federal Rule of Civil Procedure 37 or pursuant to the Court's inherent authority.

Anheuser-Busch, Inc. v. Natural Beverage Distrib., 69 F.3d 337, 348 (9th Cir.

1995).  Rule 37 provides that if a party fails to obey a court order or provide

discovery, the court may issue such orders as are just, including refusing to allow

that party to support or oppose certain claims or introduce certain evidence,

making a finding that certain facts are established, and/or dismissing the action or

any part thereof.  Fed. R. Civ. P. 37(b)(2).  In lieu of, or in addition to, any of the

sanctions listed in Rule 37(b)(2), the court shall require the party failing to obey an

order or failing to act, or the attorney advising that party or both, to pay the

reasonable expenses, including attorney's fees, caused by the failure, unless the

court finds that the failure was substantially justified or that other circumstances

make an award of expenses unjust.  Id.  In order for a court to issue the sanctions of

dismissal or default, the party's conduct must have been "'due to willfulness, fault,

4

or bad faith.'" See Computer Task Group, Inc. v. Brotby, 364 F.3d 1112, 1115

(9th Cir. 2004) (quoting Payne v. Exxon Corp., 121 F.3d 503, 507 (9th Cir. 1997)).

## DISCUSSION

KOD requests that this Court issue two sanctions.  First, that a

negative inference be imputed with regard to the Eller Documents, to wit, that the

Eller Documents would reveal that Bruce Sloan, Centex Division President, had

informed Eller that KOD had the right to purchase and control the Commercial

Apartments and the LCEs.  Second, that Centex be prohibited from supporting or

opposing any claims or defenses with the Eller Documents.  KOD also moves for

an award of its fees and costs.

I.      Testimony & Documentation Regarding the Eller Documents

In asserting that Centex has failed to comply with the Court's

discovery orders, KOD relies primarily on the contention that testimony by Sloan

and Eller is contradictory and that the time line asserted by Centex is implausible.

Because the time line of events is critical to disposition of this motion, the Court

summarizes below the relevant actions and documents.

On March 15, 2010, KOD took the deposition of Bruce Sloan.  (Sloan

Dep. Mot. Ex. 3.)  During the deposition, Sloan made several pertinent statements.

First, Sloan addressed a July 25, 2007 email from Sloan to Jeff Stone, in which

Sloan wrote that he "ha[d] Eller's blessing to go forward w [sic] Ritz." (Mot. Ex. 1 at 1.)  Sloan stated during the deposition that the email was the result of a prior conversation with Eller "about the term and the general outline of how a Ritz brand might be brought to the Beach Villas." (Sloan Dep. Mot. Ex. 3 at 118:4-6.)  After being questioned about what Eller said in response to the Ritz-Carlton proposal, Sloan stated that Eller "gave us the blessing to go and pursue that." (Id. at 118:19-20.)

Sloan further testified to the existence of a package of materials that was provided to Eller (the alleged Eller Documents).  According to Sloan, there "would have been" a package of materials provided to Eller. (Id. at 119:1.)  Sloan did not affirmatively state his knowledge of such package.  Sloan stated only that there would have been a package, and that he would "have to discuss with [Eller] and find out" if the package had been produced to KOD. (Id. at 118:22-119:4.)

Subsequent emails from Centex's counsel on March 17, 2010, informed KOD that Centex had "not been able to locate . . . a packet of information sent by Bruce Sloan to the president of Centex [Eller] in contemplation of the never-executed Ritz-Carlton deal." (Mot. Ex. 6 at 1.)  According to Centex counsel, Centex had searched several days for the documents, had not uncovered any such documents, and believed that those documents either had never existed or

no longer existed.  (Id.)  Counsel stated that the absence of the documents was "not

surprising given that the documents relate[d] to a transaction which was never

executed and therefore was completely unimportant to Centex after it became clear

that no deal would take place."  (Id.)

In opposition to KOD's Second Motion to Compel filed on March 19,

2010, Centex provided a signed affidavit by Sloan, in which Sloan attested that a

search from March 15 through March 17 had failed to uncover any such Eller

Documents.  (Mot. Ex. 7.)  Sloan believed that the absence of said documents was

not surprising, because those documents "would not have been important to Centex

after it became clear that the Beach Villas at Ko Olina was never going to become

associated with Ritz-Carlton in any way."  (Sloan Aff. ¶¶ 11-15.)

Two memoranda attached to KOD's Second Motion to Compel are

noteworthy.  The first is a memorandum dated August 23, 2007, from Sloan

regarding the Ritz-Carlton Hospitality Services at Beach Villas.  (Doc. # 145 Ex.

11.)  This nine-page document included spreadsheets with pricing estimates, a

summary of terms, and Sloan's recommendation to pursue the project.  The second

is a four-page memorandum date September 3, 2007 from Sloan regarding the Ritz

Deal Recommendation.  (Id. Ex. 12.)   It includes a summary of the terms of the

proposed Ritz-Carlton agreement.

On June 7, 2010, Eller was deposed.  (Eller Dep. Mot. Ex. 9.)  He affirmed that there had been a presentation at some point in time, and that documents had accompanied that presentation.  Eller also confirmed Sloan's involvement in the presentation.  (Id. at 28:10-29:25.)  Eller did not recall the specific time that this discussion had taken place, only that there had been one.  (Id. at 28:16-17.)  It appears from the record that Eller was shown the August 23 and September 3, 2007 memoranda (marked Exhibits 2 and 5, respectively, in the transcript) during the deposition.  Eller testified that he did not recall seeing either of those two documents before.  (Id. at 16:13-16; 32:2-4.)

Sloan was deposed again on June 24, 2010.  (Sloan Dep. Mot. Ex. 10.)  Sloan reiterated that certain documents would have been put together for the presentation to Eller, but now testified that he did not believe he personally had prepared any documents for the meeting.  (Id. at 10:19-25.)  Sloan believed he had confused the Eller meeting with another meeting when he has testified earlier as to documents.  (Id. at 11:1-5.)  Sloan indicated to the August 23 and September 3, 2007 documents and stated that a document given to Eller "would have been a document like" the August 23 and September 3, 2007 memoranda.  (Id. at 11:6-10 (emphasis added).)  Shortly after making this statement, Sloan then appears to

positively identify the two memoranda as being the documents that Eller saw.  (Id. at 11:24-12:2.)

KOD believes that Sloan's June 24, 2010 testimony flatly contradicts his earlier testimony.  KOD's interpretation of Sloan's testimony is that Sloan identified the August 23 and September 3, 2007 memoranda as being the actual documents presented to Eller.  (Mot. at 15-18.)  KOD's theory, therefore, is that Sloan and Eller were untruthful about whether the Eller Documents existed and whether the two memoranda had been reviewed by Eller because those two documents where in the record when Sloan testified on March 18, 2010 that the so-called Eller Documents did not exist.  KOD contends that those documents cannot be the Eller Documents and that Centex is "playing games" with the Court.  (Mot. at 3, 19.)

The Court finds that the actual testimony on file does not support KOD's claim that Centex has affirmatively and purposefully misidentified the Eller Documents.  As Centex notes in its Opposition, Sloan testified that the documents given to Eller would have been like the August 23 and September 3, 2007 memoranda.  (Opp'n at 12.)  Sloan stated that those two memos were the only documents that he believed Eller "could have possibly been thinking about when [Eller] was talking about materials that he might have seen."  (Sloan Dep. Mot. Ex.

10. at 11:9-14.)  It is true that, upon further questioning, Sloan then appears to identify those two documents as actually what Eller saw, but KOD is asking this Court to read a single sentence from Sloan in isolation from the rest of Sloan's testimony.  Sloan states several times quite clearly that he thinks the documents Eller saw might have been something like the two memos; it is clear from the transcript that Sloan is making a guess as to what Eller might have been referring to in Eller's own testimony.  The Court is unpersuaded that this dialogue is evidence of a blatant attempt on the part of Sloan and Centex to commit perjury.

The Court cannot locate any testimony on file clearly articulating that the August 23 and September 3, 2007 memoranda actually are the Eller Documents.  The testimony that Centex cannot locate the Eller Documents and that Eller had not seen the August 23 and September 3 memoranda are not necessarily inconsistent.  There is also no indication that Sloan's statement that he confused two meetings is untrue or that Sloan affirmatively misrepresented facts to the Court.  Therefore, to the extent that KOD's motion relies on Centex's alleged misidentification of the Eller Documents, the Court is not persuaded.  The Court is disinclined to issue sanctions based on a transcript record that is, at worst, confusing.

II.     Retention of the Eller Documents

        The fact remains that there were documents accompanying the

meeting with Eller, (Eller Dep. Mot. Ex. 9 at 28:10-29:25), and that those

documents have not been produced to KOD.  KOD dedicates the majority of its

motion to its claim that Centex misled the Court, but the Court has already rejected

that ground for sanctions.  In light of this Court's finding that the August 23 and

September 3, 2007 memoranda are not the Eller Documents (and were never

claimed to be), the only other claim on record is that Centex has lost or disposed of

the Eller Documents.

        The Court must assume at this juncture that the Eller Documents had

existed but have now been lost or destroyed.  What is also clear is the absence of

any evidence, in the form of email correspondence or otherwise, of an affirmative

attempt by Centex to purposefully dispose of the documents.  This Court's analysis

is hampered by the fact that KOD, in its own words, has "no way of proving that

the Eller Documents still exist, no way of proving that the Eller Documents were

intentionally destroyed, and no way of proving what the Eller Documents actually

contain."  (Mot. at 27.)

        The parties are in disagreement as to whether Centex's document

retention policy required Centex to maintain the Eller Documents for ten years.

11

KOD posits that the Eller Documents would have been considered "strategic planning files" and therefore the policy mandates that they be kept for ten years. (Mot. at 10; Mot. Ex. 8, Record Retention Schedule at 7.)   Centex disputes that the Eller Documents would have been strategic planning files, and instead claims that they would have been "special records" of correspondence including emails and memoranda for which there is a retention period of no longer than three years from the date the correspondence was created.  (Opp'n at 13-14.)

Considering that neither party has actual knowledge or memory about what was in the Eller Documents, it is difficult for this Court to evaluate under what retention policy-category the documents would have fallen.  Both parties can only speculate as to what might have been in those documents.  If the Eller Documents were indeed similar to the August 23 and September 7, 2007 memoranda, then the documents could just have easily have a three-year retention period (as memoranda) as a ten-year retention period (as planning for a project).

In light of the foregoing, the Court concludes that sanctioning Centex by adopting an inference as to the content of the Eller Documents would be inappropriate.  There is no evidence before the Court about what was included in the documents.  Both parties admittedly do not know or do not recall what was in them.  That the documents included discussions of a highly specific nature, i.e.,

12

control over limited common elements to the commercial apartments, would be pure speculation by this Court.  In fact, the email submitted by KOD states only that Sloan had spoken with Eller "about the term and the general outline of how a Ritz brand might be brought to the Beach Villas."  (Sloan Dep. Mot. Ex. 3 at 118:4-6 (emphasis added).)  The Ritz-Carlton deal was presumably a massive project with many facets, any of which might have been the subject of the Eller Documents.

The Court does find, however, that prohibiting Centex from supporting or opposing any claims or defenses with the Eller Documents is warranted.  It appears that Centex has either misplaced or destroyed the documents, due to at least negligence, and KOD is unable to review the documents.  Centex has not produced the Eller Documents, has not shown good cause for failing to do so, and the time for discovery has passed.  Pursuant to this Court's inherent authority and Rule 37(b)(2), Centex is hereby prohibited from introducing the Eller Documents at trial.  Preclusion is warranted in this case even without evidence of bad faith because this preclusion is not tantamount to dismissal of the action.  See Commodity Futures Trading Com'n v. Noble Metals Intern., Inc., 67 F.3d 766, 770-71 (9th Cir. 1995).

CONCLUSION

For the reasons stated above, the Court GRANTS IN PART AND

DENIES IN PART KOD's motion for sanctions.  Centex is hereby precluded from

introducing evidence of the Eller Documents at trial.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, July 9, 2010.


_____
David Alan Ezra
United States District Judge


Ko Olina Development, LLC v. Centex Homes, et al., Civ. No. 09-00272 DAE-
LEK; ORDER GRANTING IN PART AND DENYING IN PART KOD'S
MOTION FOR SANCTIONS