IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| KO OLINA DEVELOPMENT, LLC, )<br>a Delaware limited liability )<br>company; and KO OLINA REALTY, )<br>LLC, a Hawaii limited liability )<br>company, )<br>  )<br>　　　　　Plaintiffs, )<br>  )<br>　　vs. )<br>  )<br>CENTEX HOMES, a Nevada general )<br>partnership, JOHN DOES 1-20; )<br>JANE DOES 1-20; DOE )<br>CORPORATIONS and OTHER )<br>ENTITIES 1-20, )<br>  )<br>　　　　　Defendants. )<br>_____ ) | CIV. NO. 09-00272 DAE-LEK |

FINDINGS OF FACT AND CONCLUSIONS OF LAW

　　　　　The Court tried this case without a jury on August 3-6, 2010.  John A. Sopuch, III, Esq., Shyla P.Y. Cockett, Esq., and Andrew James Lautenbach, Esq., appeared on behalf of Ko Olina Development, LLC ("KOD") and Ko Olina Realty, LLC (collectively, "Plaintiffs"); Bert T. Kobayashi, Jr., Esq., and Jonathan Strother Moore, Esq., appeared on behalf of Centex Homes ("Defendant").

The Court has considered the record evidence submitted, made determinations as to relevance and materiality, assessed the credibility of the witnesses, and ascertained the probative significance of the evidence presented. Upon consideration of the above, the Court finds the following facts by a preponderance of the evidence, and in applying the applicable law to such factual findings, makes the following conclusions of law. To the extent any findings of fact as stated may also be deemed to be conclusions of law, they shall also be considered conclusions of law; similarly, to the extent any conclusions of law as stated may be deemed findings of fact, they shall also be considered findings of fact. See In re Bubble Up Delaware, Inc., 684 F.2d 1259, 1262 (9th Cir. 1982).

For the reasons set forth below, the Court finds in favor of Plaintiffs in part and Defendant in part.

I.     Findings of Fact

1.     The instant lawsuit was filed on June 15, 2009. Plaintiffs sought injunctive relief and damages as to a dispute over a parcel of land known as Ko Olina Resort Parcel 53 and the limited common elements appurtenant to certain Commercial Apartments on Parcel 53. Plaintiffs seek to prevent Defendant from recharacterizing the limited common elements as common elements. The principal

dispute is whether Defendant can recharacterize the limited common elements without violating its contractual obligations to Plaintiffs.

2.      The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332.  By court order on July 29, 2010, the parties stipulated to diversity jurisdiction.  Venue is proper pursuant to 28 U.S.C. § 1391.

3.      At the time the Complaint was filed, Plaintiffs alleged over $75,000.00 in damages.

4.      On October 16, 2009, Plaintiffs filed a Second Amended Complaint. Plaintiffs did not request a jury trial.  This action went to trial on Counts I, II, III, and IV.

5.      On July 6, 2009, Defendant filed a Counterclaim.  By court order on July 7, 2010, the parties stipulated to partially dismiss Defendant's Counterclaim with prejudice.  The dismissal included multiple paragraphs within the Counterclaim, as well as Count I ¶ 4(c), Count III, Count IV, Count VII, Count VIII, and Counts IX and X as relating to residential apartments.  Count V is deemed dismissed with prejudice pursuant to the parties' stipulation to diversity jurisdiction on July 29, 2010.  This action went to trial on portions of Counts I, II, VI, IX, and X.

6.     The Court makes the following findings of fact regarding the parties' agreements with respect to the condominium-hotel development project now known as the Ko Olina Beach Villas project.

7.     On December 23, 2004, Plaintiffs entered into a purchase and sale agreement ("PSA") to sell Parcel 53 to Defendant for the development of a condominium-hotel tower consisting of commercial units, residential units, and amenities.  (Joint Ex. 501.)

> a.     Paragraph 7A of the PSA describes, among other things, Plaintiffs' rights to purchase the condominium apartments for cash purchase equal to the out-of-pocket construction cost incurred by Defendant.  (Id. ¶ 7A(A)-(B).)

8.     On September 1, 2005, the parties recorded a Right of First Refusal, Purchase Option, Agreement of Lease ("ROFR").  (Joint Ex. 510.)

> a.     The ROFR contemplates construction of "commercial units," to be referred to as "KOD Commercial Apartments."  These are denominated CA-1 and CA-3, with additional commercial units to follow.  (Id. ¶ C.)

> b.     Under the ROFR, the parties agreed that "no sale, lease or transfer of a KOD Commercial Apartment may be effected

4

unless and until KOD shall have been offered the opportunity to

purchase or lease the same . . . and shall have elected not to do

so" under certain terms and conditions.  (<u>Id.</u> ¶ 1.)

c.     Under the terms and conditions of the ROFR, KOD agreed that

should KOD exercise its "right to purchase, acquire, or lease

one or more of the affected KOD Commercial Apartment(s),

KOD shall do so on the terms and conditions set forth in the

Sale Notice, provided, however, that (i) if a purchase, the

purchase price to be paid by KOD shall be the 'Sale Price'

determined as hereinafter provided, . . . and (iii) any conditions

not reasonably capable of being satisfied by KOD shall be

deemed waived and inapplicable to the sale."  (<u>Id.</u> ¶ 1(c).)

9.     Also on September 1, 2005, the parties signed the Second Amendment

to Purchase and Sale Agreement.  (Joint Ex. 502.)  Exhibit A to the Second

Amendment to the PSA is a draft Declaration of Condominium Property Regime

(the "Draft Condominium Declaration").  (Joint Ex. 502-A.)

10.    Also on September 1, 2005, the parties recorded a Declaration of

Covenants and Restrictions.  (Joint Ex. 511.)

11.   On October 7, 2005, Defendant recorded a Declaration of Condominium Property Regime of Beach Villas at Ko Olina Beach Tower with the Land Court of the State of Hawaii.  (<u>See</u> Joint Ex. 513 at 2.)

12.   On April 11, 2007, Defendant recorded an Amended and Restated Declaration of Condominium Property Regime of Beach Villas at Ko Olina, with the Condominium Map, dated March 7, 2007, with the Land Court (the "Condominium Declaration").  (Joint Ex. 513.)

13.   On December 13, 2007, the parties executed a First Amendment to the ROFR.  (Joint Ex. 522.)  The First Amendment to the ROFR is effective against CA-1, CA-2, and CA-3.  (<u>Id.</u> ¶ 1.)

   a.   The First Amendment contains a new Section 16, entitled "Purchase Option."  This Purchase Option provides that upon the fifth anniversary of the commencement of the terms of the lease (which would result in an trigger date of December 12, 2012) and for ninety days after KOD receives the applicable construction costs, KOD has the option to acquire any KOD Commercial Apartments that was either, one, not already acquired by KOD, or, two, not already transferred to the Association of Apartment Owners ("AOAO") after KOD had

6

not exercised its right of first refusal.  KOD has the right to

purchase these apartments for their construction costs.  (Id. ¶ 4.)

    b.    In all other respects, except certain provisions not pertinent

here, the terms of the ROFR are ratified in full.  (Id. at 3 ¶ 4.)[1]

14.    On September 12, 2008, the parties executed a Second Amendment to

the ROFR.  (Joint Ex. 531.)  The Second Amendment is effective against CA-1,

CA-2, CA-3, CA-B, and CA-C.  (Id. ¶ 1.)

    a.    The Second Amendment provides that KOD (and its entities)

"waive[s] any and all rights and options . . . contained in

Section 7A of the PSA . . . to purchase . . . any or all of the

Commercial Apartments set forth in the [Condominium

Declaration]."  (Id. ¶ 2.)

    b.    The Second Amendment also contains a new Section 17,

entitled "Transfer to AOAO or KOD."  Within Section 17,

Defendant covenants not to sell, transfer, or convey its interest

in the KOD Commercial Apartments to any entity other than

KOD or the AOAO unless both have declined to acquire the

---

[1] The First Amendment to the ROFR erroneously lists paragraph 4 twice. This citation is to the paragraph 4 that is found on page 3.

interest.  Defendant would offer the Commercial Apartments to AOAO for $1.  This $1 offer would trigger KOD's right of first refusal, thus entitling KOD to purchase the Commercial Apartments for $1.  Defendant's offer to the AOAO is to occur within thirty days of the earliest of several possible events, including the calendar date December 31, 2012.  (Id. ¶ 3.)

15.    The Court makes the following findings as to the pertinent pre-trial orders.

16.    On June 8, 2010, the Court issued its Order: (1) Granting in Part and Denying in Part Without Prejudice Centex's Motion for Summary Judgment; (2) Denying Without Prejudice KOD's First Motion for Partial Summary Judgment; (3) Denying KOD's Second Motion for Summary Judgment; and (4) Denying Without Prejudice KOD's Third Motion for Summary Judgment.  The Court issued several findings in this order, including but not limited to:

a.    Covenant 3B of the Declaration of Covenants does not independently prohibit Defendant from recharacterizing the limited common elements as common elements.

b.    The PSA does not refer to or clarify either party's rights in the limited common elements.

8

c.      The term "Commercial Apartment" as used in the First and

Second Amendments to the ROFR is not expressly defined to

either include or exclude the limited common elements

appurtenant to each commercial apartment.

d.      The term "Commercial Apartment" as used in the

Condominium Declaration is defined to be separate from the

"common elements."

e.      Article IID of the Condominium Declaration grants an

apartment owner the right to build upon or change any

appurtenant limited common element and may lease any such

limited common element.

f.      Article XXIII of the Condominium Declaration expressly

reserves to Defendant the right to amend the Condominium

Declaration in order to recharacterize the limited common

elements as common elements, without the consent of any

owner.  Any owner's rights that are created in Article IID are

subject to the limitation in Article XXIII.

g.      Genuine issues of material fact existed as to: (1) the parties'

intent to either include or exclude limited common elements

9

when transferring the Commercial Apartments; and (2) whether

Defendant can exercise its rights under the Condominium

Declaration without violating its independent contractual

obligations to Plaintiffs.  The Court concluded that trial on

these matters was warranted.

17.    On July 28, 2010, the Court ruled on Defendant's motions in limine.

    a.    The Court denied Defendant's motion to exclude all parol

       evidence.

    b.    The Court denied without prejudice Defendant's motion to

       exclude the testimony of Michael Kosmin.  Defendant was

       granted leave to take the deposition of Mr. Kosmin again.

18.    By court order on July 29, 2010, Plaintiffs stipulated that they would

not seek damages at trial.  Plaintiffs sought only declaratory and injunctive relief,

plus attorneys' fees and costs should they prevail.  Defendant stipulated to

withdraw its third motion in limine as to damages.

19.    Upon consideration of the evidence presented at trial, the Court makes

the following findings of fact.

20.    The ROFR, the First and Second Amendments to the ROFR, the PSA,

and the Second Amendment to the PSA do not, themselves, expressly define the

terms "Commercial Apartments" or "KOD Commercial Apartments" as either

including or excluding the limited common elements.

21.     The ROFR references Plaintiffs' right to purchase a "Commercial

Apartment" but does not define this term except to confirm that CA-1 and CA-3

are "commercial units." (Joint Ex. 510.)  A detailed description of CA-1 and CA-3

is not provided in the ROFR.  (Id.).

      a.     The ROFR does not include the words "limited common

          element" anywhere in its terms.

      b.     Exhibit B to the ROFR is a draft lease.  (Joint Ex. 510-B.)

          Exhibit A to the draft lease is a map of commercial apartment

          CA-1.  The map of CA-1 includes a schematic of the unit, with

          the appurtenant limited common elements identified with hash-

          marks.  (Id. at Ex. A.)

22.     The First Amendment to the ROFR refers to CA-1, CA-2, and CA-3

as "commercial units" and "KOD Commercial Apartments," but does not expressly

define the term "commercial apartment."  (Joint Ex. 522.)

23.     The Second Amendment to the ROFR refers to CA-1, CA-2, CA-3,

CA-B, and CA-C as "commercial units" and "KOD Commercial Apartments," but

also does not define "commercial apartment" or reference limited common elements.  (Joint Ex. 531.)

24.     Likewise, the PSA does not define the limited common elements in its contract terms.  The PSA does, however, incorporate by reference any exhibits attached to the agreement.  (See Joint Ex. 501.)

25.     Paragraph 27 of the PSA expressly incorporates by reference all exhibits attached to the agreement.  "All Exhibits that are attached to this Agreement are incorporated herein by reference."  (Joint Ex. 501 ¶ 27.)

26.     Paragraph 8 of the Second Amendment to the PSA ratifies and confirms the terms of the agreement unless expressly modified.  (Joint Ex. 502 ¶ 8.)  The Second Amendment to the PSA therefore confirms paragraph 27 of the PSA, which incorporates by reference all exhibits attached to the agreement.

27.     During trial, Plaintiffs did not dispute that paragraph 8 of the Second Amendment to the PSA confirms paragraph 27 of the PSA.  No evidence was presented to the contrary.

28.     Neither the PSA nor the Second Amendment to the PSA limit what portion of an exhibit is incorporated.

29.     <u>Accordingly, Exhibit A to the Second Amendment to the PSA is incorporated by reference into the agreement</u>.  Exhibit A is not "extrinsic evidence" because it is incorporated into the Second Amendment to the PSA.

30.     With respect to Exhibit A, the Second Amendment to the PSA states that KOD "approved the redraft thereof substantially in the form of Exhibit A attached hereto."  (Joint Ex. 502 ¶ 1(B).)

31.     Exhibit A is a draft of the Declaration of Condominium Property Regime of Ko Olina Beach Villas Beach Tower (the "Draft Condominium Declaration").  (Joint Ex. 502-A.)

32.     In the Draft Condominium Declaration, a "Commercial Apartment" is defined as "an apartment identified in Article II.A.2. in this Declaration and depicted on the Condominium Map."  (Joint Ex. 502-A art. I.B.13.)

33.     Article II.A.2 identifies the apartments as CA-1, CA-2, and CA-3. (<u>Id.</u> art. II.A.2.)

34.     Article II.A.2 further states that "Commercial Apartment 3 is a free standing building located near the pool and beach area."  (<u>Id.</u>)  Article II.A.2 does not describe CA-1 or CA-2 as "free standing."  (<u>Id.</u>)  "The Commercial Apartments are constructed primarily of wood, concrete, steel, glass and asphalt."  (<u>Id.</u>)

Descriptions of the construction material of the apartments does not include any reference to limited common elements.

35.     A "Commercial Limited Common Element" is defined as "those areas identified herein or on the Condominium Map as being appurtenant to a Commercial Apartment."  (Id. art. I.B.14.)

36.     "Common Elements" are defined as "those parts of the Project that are defined in this Declaration as Common Elements.  The term Common Elements includes those portions of the Project designated in this Declaration as Limited Common Elements."  (Id. art I.B.15.)

37.     The Condominium Map depicts the commercial units surrounded by limited common elements, which are identified with hash-marks and shading.

38.     Because the limited common elements are marked on the schematic of the unit in the Condominium Map, the map alone does not clarify whether the limited common elements are considered separate from the Commercial Apartments.

39.     However, Article II.B.4 provides "other data identifying and defining the apartments."  (Joint Ex. 502-A art. II.B.4.)  The ninety-five apartments referenced in Article II.B include both the ninety-two residential apartments and the three commercial apartments that were in existence at that time, CA-1, CA-2,

14

and CA-3.  (See id. art II.A.1-2.)  Article II.B.4 details various components that should be considered included in the apartments, such as walls, pipes, interior surfaces of walls, and interior stairway connecting the floors of an apartment. Article II.B.4 also details various components that shall not be considered included in the apartments.

     a.    Common elements and limited common elements are expressly excluded from the apartments.

     b.    Article II.B.4 states that, "[w]ith the exception of Commercial Apartment 3 that is a free standing building, the respective Apartments shall not be deemed to include: . . . (vi) the Common Elements, including the Limited Common Elements described below."  (Id. art. II.B.4.)

40.    "Common Elements" are also described in the Draft Condominium Declaration.  The document states that the common elements include "any and all amenities operated to serve the Project (if any), including, without limitation, the Limited Common Elements appurtenant to the Business Apartment."  (Id. art. II.C.8.)  The common elements are further limited to not constitute "apartments": "One freehold estate is hereby designated in all remaining portions of the Project, which do not constitute Apartments, herein called the 'Common Elements.'"  (Id.

art. II.C.)  Therefore, the common elements include the limited common elements, which do not include apartments.

41.     Accordingly, Articles II.B.4 and II.C of the Draft Condominium Declaration clearly define the limited common elements as separate and distinct from the Commercial Apartments.

42.     The relevant definitions and descriptions in the Draft Condominium Declaration are <u>identical</u> to the definitions and descriptions in the final Condominium Declaration.  (Joint Ex. 502-A at 4-12; Joint Ex. 513 at 5-13.)

43.     The ROFR, as amended, does not either expressly or impliedly contradict the definitions or descriptions of the "commercial apartments" or "common elements" as found in the amended PSA by virtue of the incorporated Draft Condominium Declaration.

44.     No subsequent agreements were ever signed by Plaintiffs or Defendant that altered the definitions or the descriptions of the apartments and common elements found in the Draft Condominium Declaration that was incorporated into the Second Amendment to the PSA by paragraph 8 of the Second Amendment to the PSA and by paragraph 27 of the PSA.

45.     No terms in the ROFR, as amended, invalidate the full force and effect of the PSA or the Second Amendment to the PSA except for the waiver of

16

paragraph 7A of the PSA.  The waiver of paragraph 7A does not alter the definition or constitution of the commercial apartments.  (See Joint Ex. 531 ¶ 2.)

46.    Although there is no condominium declaration attached to the ROFR or its subsequent amendments, no terms of the ROFR invalidate the definitions and uses of the terms as incorporated into the PSA.  The ROFR, as amended, does not invalidate the terms of the PSA incorporating the Draft Condominium Declaration.

47.    Moreover, as discussed further below, no terms in the ROFR, as amended, invalidate the definitions and descriptions of "units" and "limited common elements" as provided in Hawaii's controlling condominium statute.

48.    Accordingly, upon review of the full facts presented at trial, the Court finds and concludes that the contract terms are not ambiguous.  The PSA, as amended, expressly incorporates all exhibits that were attached at the time it was signed.  Paragraph 8 of the Second Amendment to the PSA ratifies and confirms the terms of the agreement unless expressly modified, and the PSA's incorporation of all attached exhibits is ratified.  The Draft Condominium Declaration was attached to the Second Amendment to the PSA.  This Draft Condominium Declaration expressly states that the apartments do not include the limited common elements.  Plaintiffs acknowledged and were bound by this definition when the contract they signed expressly incorporated the Draft Condominium Declaration

along with all its definitions.  There is no contractual evidence before the Court to the contrary.

49.     Moreover, as presented in the Conclusions of Law, no terms in the PSA as amended or the ROFR as amended waive the statutory distinction between commercial "units" and "limited common elements."

50.     Throughout the trial, Jeffrey Stone testified for Plaintiffs that it was Plaintiffs' intent to maintain control over the limited common elements.  The evidence proffered at trial, however, demonstrated that ownership over the limited common elements is not what Plaintiffs actually contracted for.  "[I]t is a fundamental rule of contract law that a competent party who signs a written instrument is bound by its terms; and in the absence of mistake, fraud, or duress, a failure to read or understand the contents of the instrument cannot relieve the signing party of the obligation imposed therein."  Liberty Bank v. Shimokawa, 2 Haw. App. 280, 283 (1981) (citations omitted).

51.     Plaintiffs did not allege, or offer evidence of, mutual mistake, fraud, or duress during trial.

52.     "[O]ne who assents to a contract is bound by it and cannot complain that he has not read it or did not know what it contained."  Leong v. Kaiser Found.

Hosp., 71 Haw. 240, 245 (1990); see Courbat v. Dahana Ranch, Inc., 111 Hawaii 254, 264 (2006).

53.     At trial, Plaintiffs did not offer evidence of any other contractual definition of the term "Commercial Apartment" to contradict the definition found in the incorporated Draft Condominium Declaration.

54.     At trial, Plaintiffs did not offer evidence undermining the validity of the contracts signed by Plaintiffs and Defendant.

55.     Plaintiffs did not proffer evidence of any binding contractual agreement between the parties that included the limited common elements as "part and parcel" with the Commercial Apartments.  Plaintiffs' reference during trial to the Condominium Map depicted, at most, a commercial unit surrounded by limited common elements.  (Pl. Ex. 99, 102.)  The maps simply present a schematic of the unit as surrounded by limited common elements and common elements.  There is no indication on the map that the limited common elements are considered a part of the unit itself.  In fact, Plaintiffs' Exhibit No. 99 identifies the "commercial units" in green and the "limited common elements" in yellow.  Such color distinction does not rebut the description of the common elements found elsewhere in the Condominium Declaration.  To the contrary, considering the contract as a whole, a more reasonable interpretation of the Condominium Map and the fact that the

limited common elements are set off from the units by different coloring and

shading reaffirms that the limited common elements are separate and distinct from

the units themselves.

56.     At trial, Plaintiffs primarily relied on evidence of the subjective intent

of the parties to show that the limited common elements were automatically

included in the term "commercial apartment."  This evidence was derived

substantially from negotiations between Plaintiffs and Defendant and third parties,

including Ritz-Carlton.  As set forth below, however, absent a finding of

contractual ambiguity, the Court is prohibited from considering the parties'

subjective intent.  The Court may not make findings of fact as to the parties' intent

because the contract terms were not ambiguous.

57.     After careful consideration of the facts as presented at trial, the Court

departs from the June 8, 2010 Order insofar as it concluded that the contract terms

were ambiguous.  In a motion for summary judgment, when there is a chance of

ambiguity in the contract terms, going forward with trial is preferable, as the Court

must construe the evidence in a light most favorable to the non-moving party.

After receiving the full factual evidence and record presented by the parties at trial

and analyzing the contracts in context, the Court concludes that there is no

ambiguity in the agreements.

II.     Conclusions of Law[2]

58.     Whether a contract is ambiguous is a question of law for the court. Local Motion, Inc. v. Niescher, 105 F.3d 1278, 1280 (9th Cir. 1997).

59.     This Court's review is limited to the express terms of the contract unless an ambiguity exists in the contract terms.  See United Pub. Workers, AFSCME, Local 646, AFL-CIO v. Dawson Int'l, Inc., 113 Hawaii 127, 140-41 (2006); State Farm Fire & Cas. Co. v. Pac. Rent-All, Inc., 90 Hawaii 315, 324 (1999); Amfac, Inc. v. Waikiki Beachcomber Inv. Co., 74 Haw. 85, 124-25 (1992); Hanagami v. China Airlines, Ltd., 67 Haw. 357, 364 (1984).

60.     "Since the determination of whether an ambiguity exists in a contract is to be made on an objective basis, not by the subjective contentions of parties, a conclusion of ambiguity is not compelled by the fact that the parties to a document, or their attorneys, have or suggest opposing interpretations of a contract, or even disagree as to whether the contract is reasonably open to just one interpretation." 11 Williston on Contracts § 30:4 (4th ed. 1999 & Supp. 2010).  Moreover, "[t]he

---

[2]  The Court has no need to take judicial notice of Plaintiffs' Ex Parte Motion for a Temporary Restraining Order, which the Court has already ruled upon, when making the findings and conclusions herein.  The Court declines Defendant's request for judicial notice.  (Def. Closing Arg. at 21, 37-39.)

existence of mutual assent or intent to accept is determined by an objective

standard." <u>Standard Mgmt., Inc. v. Kekona</u>, 99 Hawaii 125, 134 (2001).

61.   The Supreme Court of Hawaii has "adopt[ed] the view allowing

extrinsic evidence, i.e., all evidence outside of the writing including parol

evidence, to be considered by the court to determine the true intent of the parties <u>if</u>

<u>there is any doubt or controversy as to the meaning of the language embodying</u>

<u>their bargain</u>." <u>Hokama v. Relinc Corp.</u>, 57 Haw. 470, 476 (1977) (emphasis

added); <u>see</u> <u>In re Lock Revocable Living Trust</u>, 109 Hawaii 146, 152-53 (2005);

<u>Matter of Ikuta's Estate</u>, 64 Haw. 236, 244 (1981).

62.   In the absence of ambiguity or claims of fraud, duress, or mutual

mistake, extrinsic evidence is inadmissible.  <u>See</u> <u>State Farm</u>, 90 Hawaii at 324.

63.   Because the contracts are not ambiguous, and because there has been

no claim of fraud, duress, or mutual mistake, the Court is not entitled to consider

extrinsic evidence of the parties' subjective intent.

       a.   At trial, Plaintiffs presented extrinsic evidence in the form of

extra-contractual letters, correspondences, statements, and

internal memoranda (such as Plaintiffs' Exhibit 2).  The Court

is not entitled to consider these documents because they are not

part of the unambiguous agreements.

b.     The Court is likewise not permitted to consider evidence of the parties' negotiations with Ritz-Carlton in relation to the failed development project, or extrinsic evidence regarding the Kanazawa Group's "threatened lawsuit" against Defendant (see Pl. Ex. 81).

64.     The Draft Condominium Declaration was incorporated into the PSA and the Second Amendment to the PSA, which merges the definitions set forth in the Draft Condominium Declaration into the Second Amendment to the PSA.  See Brooks v. Minn, 73 Haw. 566, 572 (1992) (holding that a property settlement agreement that is incorporated into a decree is merged into the decree); Abramson v. Bd. of Regents, Univ. of Haw., 56 Haw. 680, 687 (1976) ("[T]he published tenure policy of an educational institution may be incorporated by reference into the employment contract of a probationary faculty member, who may become entitled to tenure upon fulfilling the conditions of tenure policy."); Vaught v. Scottsdale Healthcare Corp. Health Plan, 546 F.3d 620, 627 (9th Cir. 2008) ("Based on general rules of contract interpretation, we interpret the Plan's summary plan description as incorporating the EOB's review procedures by reference.").

65.    As long as a contract makes clear reference to a document, the parties may contract to incorporate terms by reference to a separate document, even one to which they are not parties, and even if the document is unsigned.  11 Williston on Contracts, § 30:25 (4th ed. 1999 & Supp. 2010).  When a writing refers to another document, that document becomes constructively part of the writing.  Id. "Incorporation by reference makes the subject matter referred to as much a part of that which incorporates it as though set forth therein at full length."  State v. Hawaiian Dredging Co., 48 Haw. 152, 174 (1964); see Cunha v. Ward Foods, Inc., 804 F.2d 1418, 1428 (9th Cir. 1986) ("When a document incorporates outside material by reference, the subject matter to which it refers becomes a part of the incorporating document just as if it were set out in full.").

a.    The Draft Condominium Declaration was clearly referenced in the Second Amendment to the PSA and attached thereto as Exhibit A.

b.    The Draft Condominium Declaration was incorporated into the Second Amendment to the PSA pursuant to paragraph 27 of the PSA and paragraph 8 of the Second Amendment to the PSA.

66.    Moreover, the State of Hawaii has a detailed and controlling condominium statutory scheme that is applicable to the agreements.  See Lee v.

24

Puamana Cmty. Ass'n, 109 Hawaii 561, 575 (2006).  "[C]ondominium property regimes are creatures of statute."  Id.

67.    This is significant because existing law is part of a contract where there is no stipulation to the contrary.  Quedding v. Arisumi Bros., Inc., 66 Haw. 335, 338 (1983); City & County of Honolulu v. Kam, 48 Haw. 349, 355 (1965). The parties are therefore assumed to be aware of and incorporate the statutory definitions of various terms of the contract unless the contract indicates otherwise.

68.    Hawaii's condominium statute defines commercial "units" and "common elements" as distinct and separate entities.

69.    Hawaii Revised States ("HRS") Chapter 514A (repealed July 1, 2006) is applicable to this project because it was in effect when the parties signed the PSA, the Second Amendment to the PSA, and the ROFR.  Chapter 514B is also described herein to show the consistency of the applicable statutory terms over time.  Chapter 514B was in effect when the Condominium Declaration was filed and when the parties agreed to the First and Second Amendments to the ROFR.

        a.    The statutory definitions of "common elements" and "limited common elements" clearly exclude the units themselves from the common elements.

b.     Chapter 514B defines "common elements" as "[a]ll portions of a condominium <u>other than the units</u>" and "[a]ny other interest in real estate for the benefit of unit owners that are subject to the declaration."  Haw. Rev. Stat. § 514B-3 (emphasis added).

c.     The former Chapter 514A defined "common elements" to include a lengthy itemized list of components, ranging from stairways to yards, incinerators, and elevators.  Haw. Rev. Stat. § 514A-3 (repealed July 1, 2006).  The definition of "common elements" in Chapter 514A-3 omits any mention of "units" or "apartment" in its list of items.

d.     Chapter 514B defines "limited common elements" as "a portion of the common elements designated by the declaration or by operation of section 514B-35 for the exclusive use of one or more but fewer than all of the units."  Haw. Rev. Stat. § 514B-3. The statute, therefore, defines the LCE as being part of the common elements, and not part of a "unit."

e.     The former Chapter 514A defined "limited common elements" as including "those common elements designed in the declaration as reserved for the use of a certain apartment to the

26

exclusion of the other apartments; provided that no amendment

to the declaration affecting any of the limited common elements

shall be effective without the consent of the owner or owners . .

. ." Haw. Rev. Stat. § 514A-3 (repealed July 1, 2006).

f.      None of the definitions in either Chapter 514A or Chapter 514B

indicate that a unit would automatically include the limited

common elements. To the contrary, the definitions in Chapter

514A, which conspicuously does not include a "unit" in the

definition, indicate that limited common elements are not

considered part of a "unit."

70.      The parties' use of the terms "limited common element," "unit," or

"apartment" incorporates the legal definition unless stipulate otherwise. See

Quedding, 66 Haw. at 338; Kam, 48 Haw. at 355. The parties are presumed to be

aware of and incorporate existing legal definitions of commercial "apartment" or

"unit" when using their terms in their contracts. This is particularly true here,

when the condominium development project is controlled by statute.

a.      For instance, the ROFR identifies the commercial apartments

CA-1, CA-2, and CA-3 as "commercial units." (Joint Ex. 510 ¶

C (emphasis added).)

27

b.      There is no stipulation in any of the agreements that the statutory exclusion of common elements from a "unit" is not applicable.

71.      <u>Accordingly, the Court concludes that Plaintiffs' rights to the KOD Commercial Apartments did not entitle them to the limited common elements</u>.

72.      The Court makes the following conclusions of law regarding Plaintiffs' rights under Sections 16 and 17 of the ROFR, as amended.

73.      Section 16 grants KOD an option in the KOD Commercial Apartments, to be exercised on December 12, 2012 and for ninety days after KOD receives the applicable construction costs, to purchase the KOD Commercial Apartments for their construction costs.  (Joint Ex. 522 ¶ 4.)

74.      Section 16 was not expressly or impliedly waived or superceded in the Second Amendment to the ROFR.  The Second Amendment to the ROFR states that "[i]n all other respects, the Agreement, as amended hereby and the surviving term of the PSA shall remain in full force and effect, and the parties hereto do hereby ratify the terms thereof."  (Joint Ex. 531 ¶ 4.)

75.      Section 16 provides KOD a purchase option, wherein KOD may force Defendant to sell the KOD Commercial Apartments for construction costs, upon a certain date.

76.     Section 17 of the ROFR directs Defendant to present an offer in the KOD Commercial Apartments to AOAO for $1 within thirty days after the earliest of: (1) the closing of sale of the final residential condominium; (2) December 31, 2012; (3) termination of the resort management agreement or the hospitality services agreements; or (4) at least forty five days prior to an offer of the KOD Commercial Apartments for sale to a third-party.  (Joint Ex. 531 ¶ 3.)

77.     Section 17 is a right of first refusal, and not an option.  Section 17 itself expressly states that the "AOAO offer will trigger KOD's right of first refusal."  (Joint Ex. 531 ¶ 3.)  Even looking beyond the plain language of Section 17 and considering the document as a whole, Section 17 creates a right of preemption in KOD to purchase the KOD Commercial Apartments for $1, after they had been offered to the AOAO for $1 under the terms of Section 17.  KOD may not compel a sale by Defendant under Section 17.  See generally 3 Corbin on Contracts, §§ 11.3-11.4 (rev. ed. 1996 & Supp. 2010).

78.     Section 17 also provides that the AOAO offer will "trigger KOD's right of first refusal as set forth in Section 1 of this Agreement and in accordance with subsection 1(c) thereof."  (Joint Ex. 531 ¶ 3.)

79.    The aforementioned Section 1 of the ROFR permits Defendant to sell the KOD Commercial Apartments on certain terms, including those in the Sale Notice.  (Joint Ex. 510 ¶ 1(c).)

80.    The terms of Section 17 place no independent restrictions on the terms of the Sale Notice.

81.    Under a right of first refusal, the holder is entitled to purchase on the same terms offered to the third party.  See generally Flint v. MacKenzie, 53 Haw. 626, 630 (1972); Orange County v. Hongkong & Shanghai Banking Corp., 52 F.3d 821, 822 (9th Cir. 1995); Kaiser Dev. Co. v. City & County of Honolulu, 649 F. Supp. 926, 937 (D. Haw. 1986); Stevens v. Foren, 959 P.2d 1008, 1011-12 (Or. Ct. App. 1998); Gleason v. Nw. Mortg., Inc., 243 F.3d 130, 139 (3rd Cir. 2001); Kunelius v. Town of Stow, 588 F.3d 1, 12 (1st Cir. 2009).

82.    KOD is therefore entitled to exercise its rights under Section 17 and purchase the KOD Commercial Apartments on the same terms offered to the AOAO.  Because of the Court's earlier findings and conclusions, reference to sale of "KOD Commercial Apartments" does not include the limited common elements unless expressly stated otherwise.

83.    The Court makes the following conclusions of law regarding Defendant's right and obligations under the Condominium Declaration.

30

84.     Any apartment owner's "use" of an appurtenant common element is subject to the provisions of the declaration and bylaws.  Article XXIII of the Condominium Declaration expressly reserves to Defendant the power to recharacterize the limited common elements.

    a.     Article XXIII, entitled "Reserved Right to Recharacterize Limited Common Elements," provides:

> The Developer shall have the <u>reserved right</u>, but not the obligation, to amend this Declaration to <u>recharacterize certain Limited Common Elements as may be appurtenant to an Apartment owned by the Developer as being Common Elements of the Project</u>. <u>The right to amend the Declaration to effect the recharacterization of any Limited Common Element appurtenant</u> to an Apartment as Common Elements shall occur at any time or times prior to December 31, 2025, and Developer may, <u>without being required to obtain the consent or joinder of any Owner</u>, lienholder or other persons, execute, deliver and file any deed and/or amendments to this Declaration or to the Condominium Map, and any and all other instruments necessary or appropriate for the purpose of carrying out the provisions or exercising the foregoing rights, powers or privileges.

(Joint. Ex. 502-A at 43; Joint Ex. 513 at page 44 (emphasis added).).

    b.     Article XXIII, therefore, expressly grants Defendant the right to recharacterize the limited common elements as common elements.

85.     <u>Because Plaintiffs' right to the KOD Commercial Apartments does not entitle them to the limited common elements, Article XXIII does not violate Plaintiffs' rights under the PSA as amended or the ROFR as amended</u>.

86.     Article XIII of the Condominium Declaration provides for amendment by a 75% vote of the apartment owners.  (Joint Ex. 502-A at 30; Joint Ex. 513 at 31-32).

87.     <u>Because Plaintiffs' right to the KOD Commercial Apartments does not entitle them to the limited common elements, consent by Defendant to recharacterization pursuant to Article XIII does not violate Plaintiffs' rights under the PSA as amended or the ROFR as amended</u>.

88.     Based on the foregoing, the Court renders judgment as set forth below.

89.     As to Count I of Plaintiffs' Second Amended Complaint, the Court finds in favor of Defendant in part and in favor of Plaintiffs in part.

a.      Plaintiffs' contractual rights to the KOD Commercial Apartments do not entitled Plaintiffs to the limited common elements.  The Court finds in favor of Defendant on this issue.

b.      Plaintiffs do have the right to purchase the KOD Commercial Apartments upon the passage of time or the happening of

several events, as described in sections 16 and 17 of the ROFR, as amended, and as recounted herein.  The Court finds in favor of Plaintiffs on this issue.

90.     As to Count II of Plaintiffs' Second Amended Complaint, the Court finds in favor of Defendant in part and in favor of Plaintiffs in part.

a.     Pursuant to Section 16 of the First Amendment to the ROFR, KOD has an option in the KOD apartments to be exercised on December 12, 2012 for the "applicable construction costs" of the KOD Commercial Apartments.  The Court finds in favor of Plaintiffs on this issue.

b.     Pursuant to Section 17 of the Second Amendment to the ROFR, Plaintiffs have a right of first refusal, and not an option, in the KOD Commercial Apartments for $1, within thirty days after the earliest of several occurrences listed in Section 17 and recounted herein.  The Court finds in favor of Defendant on this issue.

c.     Section 16 was not rendered moot by Section 17, which simply provides KOD an alternative method for acquiring the KOD

Commercial Apartments.  The Court finds in favor of Plaintiffs

on this issue.

d.     Defendant is not obligated to sell the appurtenant limited

common elements to Plaintiffs upon sale of the KOD

Commercial Apartments, even if certain limited common

elements were appurtenant to the KOD Commercial Apartments

on the date the agreements were executed.  The Court finds in

favor of Defendant on this issue.

e.     Defendant is not contractually precluded from voting in favor

of an amendment to the Condominium Declaration to

recharacterize the limited common elements under Article XIII,

and Defendant is not contractually precluded from

recharacterizing the limited common elements under Article

XXIII.  The Court finds in favor of Defendant on this issue.

91.     As to Count III of Plaintiffs' Second Amended Complaint, the Court

finds in favor of Defendant.  Plaintiffs did not demonstrate at trial that they are

entitled to prevail under the doctrine of promissory estoppel.  The four elements of

promissory estoppel are: (1) there was a promise; (2) the promisor must, at the time

he or she made the promise, foresee that the promisee would rely upon the

promise; (3) the promisee does in fact rely upon the promisor's promise; and (4) enforcement of the promise is necessary to avoid injustice.  <u>Gonsalves v. Nissan Motor Corp. In Hawaii, Ltd.</u>, 100 Hawaii 149, 164-65 (2002).

    a.    At trial, Plaintiffs did not argue that they should prevail by promissory estoppel, and Plaintiffs' only specific mention of promissory estoppel is relegated to a footnote in Plaintiffs' closing arguments without evidentiary support.  (Pl. Closing Arg. at 29 n.18.)

    b.    Furthermore, upon review of the trial record, the Court concludes that Plaintiffs did not demonstrate any particular promise by Defendant that Plaintiffs relied upon to their detriment, or that enforcement of any particular promise is necessary to avoid injustice.

92.    As to Count IV of Plaintiffs' Second Amended Complaint, the Court finds in favor of Defendant.  Plaintiffs did not demonstrate that Defendant violated the implied covenant of good faith and fair deal.  "[E]very contract contains an implied covenant of good faith and fair dealing that neither party will do anything that will deprive the other of the benefits of the agreement."  <u>Best Place Inc. v. Penn Am. Ins. Co.</u>, 82 Hawaii 120, 123-24 (1996).

a.    At trial, Plaintiffs did not argue that they should prevail on this ground, and Plaintiffs' only specific mention of breach of good faith and fair dealing is relegated to a footnote in Plaintiffs' closing arguments without evidentiary support.  (Pl. Closing Arg. at 29 n.18.)

b.    Upon review of the record, Plaintiffs have not demonstrated that Defendant acted in bad faith in contemplation of and in execution of their contracts.  To the contrary, the Court concludes that Defendant has not taken any action in contravention to the contract terms.

93.    As to the remainder of Count I of Defendant's Counterclaim, the Court finds in favor of Defendant for the reasons already set forth with respect to Plaintiffs' rights in the limited common elements.

94.    As to Count II of Defendant's Counterclaim, the Court finds in favor of Defendant for the reasons already set forth with respect to Plaintiffs' rights in the limited common elements and Defendant's ability to recharacterize the limited common elements.

95.    As to Count VI of Defendant's Counterclaim, this claim is dismissed with prejudice for lack of prosecution.  Defendant did not proffer any evidence at

trial as to its right to vote unsold units specifically pursuant to HRS § 514B-106. Moreover, in Defendant's closing arguments with respect to "legal issues for consideration," Defendant does not mention, reference, or seek relief pursuant to HRS § 514B-106.

96.     As to Count IX of Defendant's Counterclaim, the Court finds in favor of Plaintiffs.  Defendant stipulated to diversity jurisdiction.  The Court further finds that Plaintiffs' action was not frivolous.  To the contrary, Plaintiffs have prevailed on several of their causes of action.  See Lee v. Haw. Pac. Health, 121 Hawaii 236, 246 (2009) ("A frivolous claim is one 'manifestly and palpably without merit, so as to indicate bad faith on the pleader's part such that argument to the court was not required.'" (quoting Doe v. Doe, 118 Hawaii 268, 285 (Haw. Ct. App. 2008))).

97.     As to Count X of Defendant's Counterclaim, the Court finds in favor of Plaintiffs.  Defendant has not established that Plaintiffs' action was malicious or outrageous, and punitive damages are not warranted.  See Lee v. Aiu, 85 Hawaii 19, 34 (1997); Young v. Allstate Ins. Co., 119 Hawaii 403, 425 (2008).

III.    Conclusion

Judgment is hereby rendered in favor of Plaintiffs in part and Defendant in part as follows.

With respect to Plaintiffs' Second Amended Complaint, the Court finds in favor of:

1.      Defendant in part and Plaintiffs in part as to Count I.  Judgment is entered in favor of Defendant as to whether Plaintiffs are contractually entitled to the limited common elements as detailed herein.  Judgment is entered in favor of Plaintiffs as to whether Plaintiffs have the right to purchase the KOD Commercial Apartments as detailed herein.

2.      Defendant in part and Plaintiffs in part as to Count II. Judgment is entered in favor of Defendant as to whether Section 17 is a right of first refusal and not an option, whether Defendant is obligated to sell the appurtenant limited common elements to Plaintiffs, and whether Defendant is precluded from recharacterizing the limited common elements.  Judgment is entered in favor of Plaintiffs as to whether Section 16 is an option, and as to whether Section 16 was rendered moot by Section 17.

3.      Defendant as to Count III.

4.      Defendant as to Count IV.

With respect to Defendant's Counterclaims adjudicated at trial, the Court finds in favor of:

1.  Defendant as to Count I.

2.  Defendant as to Count II.

3.  Plaintiffs as to Count IX.

4.  Plaintiffs as to Count X.

Count VI of Defendant's Counterclaim is hereby dismissed with prejudice for lack of prosecution.

All claims against Doe defendants are hereby dismissed with prejudice for lack of prosecution.

The Clerk of the Court is directed to enter judgment in accordance with these Findings of Fact and Conclusions of Law.

The parties may apply to the Court by separate motion for a determination of prevailing party status and entitlement to attorneys' fees and costs.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, August 26, 2010.



_____
David Alan Ezra
United States District Judge

Ko Olina Development, LLC et al. v. Centex Homes, et al., Civ. No. 09-00272
DAE-LEK; FINDINGS OF FACT AND CONCLUSIONS OF LAW