IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| KO OLINA DEVELOPMENT, LLC, ) a Delaware limited liability company, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> CENTEX HOMES, a Nevada general ) partnership, JOHN DOES 1-20; ) JANE DOES 1-20; DOE ) CORPORATIONS and OTHER ) ENTITIES 1-20, ) <br> ) <br> Defendants. ) <br> _____ ) <br> ) | CIV. NO. 09-00272 DAE-LEK |

FINDINGS OF FACT AND CONCLUSIONS OF LAW

Upon further review of the record and legal authorities, and pursuant to Plaintiff's Motion for Reconsideration (Doc. # 370), the Court withdraws its original Findings of Fact and Conclusions of Law, filed August 26, 2010 (Doc. # 352) and issues its substituted Findings of Fact and Conclusions of Law.  The Court's instant substituted Findings of Fact and Conclusions of Law modifies in part this Court's original holdings and is otherwise provided for clarification purposes only.  Accordingly, based on the Court's reconsideration of all of the

evidence presented, the Court issues the following Findings of Fact and Conclusions of Law, which shall constitute the Court's determination of this action.

The Court tried this case without a jury on August 3 - 6, 2010. John A. Sopuch, III, Esq., Shyla P.Y. Cockett, Esq., and Andrew James Lautenbach, Esq., appeared on behalf of Ko Olina Development, LLC ("KOD" or "Plaintiff"); Bert T. Kobayashi, Jr., Esq., and Jonathan Strother Moore, Esq., appeared on behalf of Centex Homes ("Defendant").

The Court has considered the record evidence submitted, made determinations as to relevance and materiality, assessed the credibility of the witnesses, and ascertained the probative significance of the evidence presented. Upon consideration of the above, the Court finds the following facts by a preponderance of the evidence, and in applying the applicable law to such factual findings, makes the following conclusions of law. To the extent any findings of fact as stated may also be deemed to be conclusions of law, they shall also be considered conclusions of law; similarly, to the extent any conclusions of law as stated may be deemed findings of fact, they shall also be considered findings of fact. See In re Bubble Up Delaware, Inc., 684 F.2d 1259, 1262 (9th Cir. 1982).

For the reasons set forth below, the Court finds in favor of Plaintiff in part and Defendant in part.

I.    Findings of Fact

1.    The Court makes the following findings regarding the Plaintiff's stated causes of action.

2.    The instant lawsuit was filed on June 15, 2009.  A Second Amended Complaint was filed October 16, 2009.[1]  Plaintiff seeks injunctive relief and damages as to a dispute over a parcel of land known as Ko Olina Resort Parcel 53 and as to exclusive easements appurtenant to certain "KOD Commercial Apartments" on Parcel 53 for the use of certain "Limited Common Elements" appurtenant to the same.

3.    Plaintiff additionally claims that Section 17 of the Right of First Refusal, Purchase Option, Agreement of Lease ("ROFR") (Joint Ex. 510), as created by the Second Amendment to the ROFR (Joint Ex. 531), provides Plaintiff with an option, not a right of first refusal, to purchase the "KOD Commercial Apartments."

---

[1] Ko Olina Realty, LLC ("KOR") was originally a second plaintiff in this action but was terminated on October 16, 2009 upon the filing of KOD's Second Amended Complaint.  Despite the termination of KOR as a plaintiff, and KOR's absence from the Second Amended Complaint, KOR is often referred to as an additional plaintiff.

4.      The term "KOD Commercial Apartments" refers to those commercial apartments designated as CA-l ,CA-2, CA-3, CA-B, and CA-C within the Ko Olina Beach Villas.  (Joint Ex. 531.)

5.      Plaintiff asserts that its right to purchase the KOD Commercial Apartments under the ROFR, together with the ROFR's First (Joint Ex. 522) and Second (Joint Ex. 531) Amendments, includes the right to exclusive use of the easements appurtenant to those apartments on the day on which Plaintiff acquired the option because "an easement appurtenant generally passes along with the dominant estate through conveyance of that property."  See Henmi Apartments, Inc. v. Sawyer, 655 P.2d 881, 886 (Haw. App. 1982) (citation omitted). Accordingly, the parties' dispute is whether Plaintiff's right to purchase the KOD Commercial Apartments includes an interest in easements appurtenant to the KOD Commercial Apartments for the exclusive use of certain Limited Common Elements, not whether KOD has the right to purchase the fee to the Limited Common Elements or the Limited Common Elements per se.

6.      Through this action, Plaintiff seeks to prevent Defendant from recharacterizing the Limited Common Elements as Common Elements.  Plaintiff argues that Defendant's recharacterization of the Limited Common Elements to Common Elements would violate Defendant's contractual duties to Plaintiff

4

because Plaintiff allegedly has a fixed property interest in the KOD Commercial Apartments (and any appurtenant easements thereto) as they existed on the day KOD acquired its option to purchase those apartments.

7.    The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332.  By Court order on July 29, 2010, the parties stipulated to diversity jurisdiction.  Venue is proper pursuant to 28 U.S.C. § 1391.

8.    At the time the Complaint was filed, Plaintiff alleged over $75,000.00 in damages.

9.    On October 16, 2009, Plaintiff filed a Second Amended Complaint. Plaintiff did not request a jury trial.

10.    On July 6, 2009, Defendant filed a Counterclaim.  By Court order on July 7, 2010, the parties stipulated to partially dismiss Defendant's Counterclaim with prejudice.  The dismissal included multiple paragraphs within the Counterclaim, as well as Count I ¶ 4(c), Count III, Count IV, Count VII, Count VIII, and Counts IX and X as relating to the residential apartments.  Count V is deemed dismissed with prejudice pursuant to the parties' stipulation to diversity jurisdiction on July 29, 2010.  This action went to trial on portions of Counts I, II, VI, IX, and X.

11.     The Court makes the following findings of fact regarding the parties' agreements with respect to the condominium-hotel development project now known as the Ko Olina Beach Villas project.

12.     On December 23, 2004, Plaintiff, together with Ko Olina Hotel #9, LLC, entered into a purchase and sale agreement ("PSA") to sell Parcel 53 to Defendant for the development of a condominium-hotel tower consisting of commercial units, residential units, and amenities.  (Joint Ex. 501.)

      a.     Paragraph 7A of the PSA describes, among other things, Plaintiff's rights to purchase the condominium apartments for cash purchase equal to the actual, out-of-pocket construction cost incurred by Defendant.  (Id. ¶ 7A(A)-(B).)

13.     On September 1, 2005, Plaintiff and Defendant recorded the Right of First Refusal, Purchase Option, Agreement of Lease ("ROFR").  (Joint Ex. 510.)

      a.     The ROFR states that two "commercial units," denominated CA-1 and CA-3, with possible additional commercial units to follow, shall be considered the "KOD Commercial Apartments."  (Id. at 2 ¶ C.)

      b.     Under the ROFR, the parties agreed that "no sale, lease or transfer of a KOD Commercial Apartment may be effected

6

unless and until KOD shall have been offered the opportunity to purchase or lease the same . . . and shall have elected not to do so" under certain terms and conditions.  (Id. at 3 ¶ 1.)

c.     Under the terms and conditions of the ROFR, KOD agreed that should KOD exercise its "right to purchase, acquire, or lease one or more of the affected KOD Commercial Apartment(s), KOD shall do so on the terms and conditions set forth in the Sale Notice, provided, however, that (i) if a purchase, the purchase price to be paid by KOD shall be the 'Sale Price' determined as hereinafter provided, . . . and (iii) any conditions not reasonably capable of being satisfied by KOD shall be deemed waived and inapplicable to the sale."  (Id. at 3 ¶ 1(c).)

14.     Also on September 1, 2005, Plaintiff, together with Ko Olina Parcel 53 LLC and Ko Olina Hotel #9, LLC, and Defendant signed the Second Amendment to Purchase and Sale Agreement.  (Joint Ex. 502.)  Exhibit A to the Second Amendment to the PSA is a draft Declaration of Condominium Property Regime (the "Draft Condominium Declaration").  (Joint Ex. 502-A.)

15.     Also on September 1, 2005, Plaintiff, together with Ko Olina Parcel 53 LLC and Ko Olina Hotel #9, LLC, and Defendant recorded a Declaration of Covenants and Restrictions.  (Joint Ex. 511.)

16.     On October 7, 2005, Defendant recorded a Declaration of Condominium Property Regime of Beach Villas at Ko Olina Beach Tower with the Land Court of the State of Hawaii.  (See Joint Ex. 513 at 2.)

17.     On April 11, 2007, Defendant recorded an Amended and Restated Declaration of Condominium Property Regime of Beach Villas at Ko Olina and Condominium Map, with the Land Court (the "Amended Condominium Declaration").  (Joint Ex. 513.)

18.     On December 13, 2007, Plaintiff and Defendant executed a First Amendment to the ROFR.  (Joint Ex. 522.)  The First Amendment to the ROFR amended the definition of KOD Commercial Apartments to include CA-1, CA-2, and CA-3.  (Id. ¶ 1.)

a.     The First Amendment contains a new Section 16, entitled "Purchase Option."  Section 16 grants KOD an option to "acquire (or cause its designee(s) to acquire) any of the KOD Commercial Apartments not therefore to acquired by KOD pursuant to Section 1 [of the ROFR.]"   The option states that it

shall be exercised upon "the fifth (5th) anniversary of the commencement of the term of the lease referred to in Section 2 [of the ROFR] and for a period of ninety (90) days after KOD's receipt from Developer . . . of the applicable construction costs thereafter[.]"  The purchase price for each apartment shall be "paid in cash and shall be the 'applicable construction cost' for such KOD Commercial Apartment[.]" The option shall not apply to "any KOD Commercial Apartment that has previously been transferred to the AOAO for the Condominium Project (after KOD has not exercised its right of first refusal to purchase such KOD Commercial Apartment)[.]"  (Joint Ex. 522 ¶ 4.)

    b.    In all other respects, except certain provisions not pertinent here, the Second Amendment ratifies the terms of the ROFR in full.  (Id. at 3 ¶ 4.)[2]

19.    On September 12, 2008, Plaintiff, together with Ko Olina Parcel 53 LLC and Ko Olina Hotel #9, LLC, and Defendant executed a Second Amendment

---

[2] The First Amendment to the ROFR erroneously lists paragraph 4 twice. This citation is to the paragraph 4 that is found on page 3.

to the ROFR.  (Joint Ex. 531.)  The Second Amendment amended the definition of KOD Commercial Apartments from three commercial units, denominated CA-1 and CA-3, to five commercial units, denominated CA-1, CA-2, CA-3, CA-B, and CA-C.  (Id. ¶ 1.)

    a.    The Second Amendment provides that KOD (and its entities) "waive[s] any and all rights and options . . . contained in Section 7A[] of the PSA . . . to purchase . . . any or all of the Commercial Apartments set forth in the [Condominium Declaration]."  (Id. at 2 ¶ 2.)

    b.    The Second Amendment also contains a new Section 17, entitled "Transfer to AOAO or KOD."  Section 17 provides in part that "[Defendant] further covenants to KOD" that "Defendant will present an offer to the AOAO for the AOAO to purchase the KOD Commercial Apartments" for a purchase price of $1 within thirty days after the earliest of: (1) the closing of sale of the final residential condominium; (2) December 31, 2012; (3) termination of the resort management agreement or the hospitality services agreements; or (4) at least forty five days prior to an offer of the KOD Commercial

Apartments for sale to a third-party.  (<u>Id.</u> at 2 ¶ 3.)  Section 17

then states "[t]he AOAO Offer will trigger KOD's right of first

refusal as set forth in Section 1 of this Agreement and in

accordance with subsection 1(c) thereof."  (<u>Id.</u> at 3 ¶ 3)

20.     The Court makes the following findings as to the pertinent pre-trial

orders.

21.     On June 8, 2010, the Court issued its Order: (1) Granting in Part and

Denying in Part Without Prejudice Centex's Motion for Summary Judgment; (2)

Denying Without Prejudice KOD's First Motion for Partial Summary Judgment;

(3) Denying KOD's Second Motion for Summary Judgment; and (4) Denying

Without Prejudice KOD's Third Motion for Summary Judgment.  The Court issued

several findings in this order, all of which the Court now finds to be inaccurate or

inapplicable except as stated below:

a.      Covenant 3B of the Declaration of Covenants does not

independently prohibit Defendant from recharacterizing the

Limited Common Elements as Common Elements.

b.      Article XXIII of the Condominium Declaration expressly

reserves to Defendant the right to amend the Condominium

Declaration in order to recharacterize the Limited Common

Elements as Common Elements, without the consent of any

owner.  Any owner's rights that are created in Article II.D of

the Condominium Declaration are subject to the limitation in

Article XXIII.

22.     This case proceeded to trial.  On July 28, 2010, the Court ruled on

Defendant's motions in limine.

    a.     The Court denied Defendant's motion to exclude all parol

evidence.

    b.     The Court denied without prejudice Defendant's motion to

exclude the testimony of Michael Kosmin.  Defendant was

granted leave to take the deposition of Mr. Kosmin again.

23.     By Court order on July 29, 2010, Plaintiff stipulated that it would not

seek damages at trial.  Plaintiff sought only declaratory and injunctive relief, plus

attorneys' fees and costs should it prevail.  Defendant stipulated to withdraw its

third motion in limine as to damages.

24.     Upon consideration of the evidence presented at trial, the Court makes

the following findings of fact.

25.     Plaintiff has sued for declaratory relief as to its rights under the

ROFR.

26.    As stated above, under the ROFR, the term "KOD Commercial Apartments" refers to those commercial units designated as CA-l ,CA-2, CA-3, CA-B, and CA-C within the Ko Olina Beach Villas.  (Joint Ex. 531.) A detailed description of the KOD Commercial Apartments is not provided in the ROFR. (Id.; Joint Exhibit 510; Joint Exhibit 522.)

       a.    Neither the ROFR nor its First and Second Amendments include the words "limited common element" anywhere in its terms.

       b.    Neither the ROFR nor its First and Second Amendments include the word "easement" anywhere in its terms.

       c.    Exhibit B to the ROFR is a draft lease.  (Joint Ex. 510-B.) Exhibit A to the draft lease is a map of commercial apartment CA-1.  The map of CA-1 includes a schematic of the unit, with the appurtenant Limited Common Elements identified with hash-marks.  (Id. at Ex. A.)  This map does not refer to or purport to create any easements appurtenant to CA-1.

27.    Accordingly, although Plaintiff alleges that it is the ROFR that provides it with a fixed property interest in any easements appurtenant to the KOD Commercial Apartments due to Plaintiff's right to purchase those apartments, the

ROFR contains no language creating any easements.  Therefore, the Court must look to other agreements or documents creating any interests in land in favor of Plaintiff.

28.     As explained below, the PSA between the parties refers to easements appurtenant to certain KOD Commercial Apartments for the exclusive use of certain Limited Common Elements appurtenant to the same.

29.     Paragraph 27 of the PSA expressly incorporates by reference all exhibits attached to the agreement.  "All Exhibits that are attached to this Agreement are incorporated herein by reference."  (Joint Ex. 501 ¶ 27.)

30.     Paragraph 8 of the Second Amendment to the PSA ratifies and confirms the terms of the PSA unless expressly modified.  (Joint Ex. 502 ¶ 8.)  The Second Amendment to the PSA therefore ratifies paragraph 27 of the PSA, which incorporates by reference all exhibits attached to the agreement.

31.     During trial, Plaintiff did not dispute that paragraph 8 of the Second Amendment to the PSA ratifies paragraph 27 of the PSA.  No evidence was presented to the contrary.

32.     Neither the PSA nor the Second Amendment to the PSA limit what portion of an exhibit is incorporated.

14

33.     <u>Accordingly, Exhibit A to the Second Amendment to the PSA is incorporated by reference into the PSA and therefore cannot be considered "extrinsic evidence" to the PSA.</u>

34.     With respect to Exhibit A, the Second Amendment to the PSA states that KOD "approved the redraft thereof substantially in the form of Exhibit A attached hereto."  (Joint Ex. 502 ¶ 1(B).)

35.     "Exhibit A" is a draft of the Declaration of Condominium Property Regime of Ko Olina Beach Villas Beach Tower (the "Draft Condominium Declaration").  (Joint Ex. 502-A.)

36.     As used herein, the relevant definitions and descriptions in the Draft Condominium Declaration are <u>identical</u> to the definitions and descriptions in the final Amended Condominium Declaration, except as noted below.  (Joint Ex. 502-A at 4-12; Joint Ex. 513 at 5-13.)

37.     In the Draft and Amended Condominium Declarations, define "Owner" or "Apartment Owner" to mean "a person or entity owning severally or as a co-tenant an Apartment and the Common Interest appurtenant thereto[.]" (Joint Ex. 502-A art. I.B.41; Joint Ex. 513 art. I.B.35.)

38.     The Declarations define "Apartment" is broadly to include Residential and Commercial Apartments:

15

"Apartment" shall mean a part of the Project, as described in this Declaration and as shown on the Condominium Map, intended for a use permitted under the Act, with an exit to a public street or highway, or to a Common Element leading to a public street or highway.

(Joint Ex. 502-A art. I.B.4; Joint Ex. 513 art. I.B.4.)

39.    Further, a "Commercial Apartment" is defined as "an apartment identified in Article II.A.2. in this Declaration and depicted on the Condominium Map."  (Joint Ex. 502-A art. I.B.13; Joint Ex. 513 art. I.B.13.)

40.    The Draft Condominium Declaration Article II.A.2 defines the term "Commercial Apartments" as CA-1, CA-2, and CA-3.  (Joint Ex. 502-A art. II.A.2.)  The Amended Condominium Declaration Article II.A.2 defines the term "Commercial Apartments" as CA-1, CA-2, CA-3, CA-4, CA-B, and CA-C. (Joint Ex. 513 art II.A.2.)

41.    CA-2 is further defined in both Declarations as the "Business Apartment."  (Joint Ex. 502-A art. II.A.2, II.D.2, art. I.B.9; Joint Ex. 513 art. II.D.2, art. I.B.10.)

42.    The PSA's definition of Commercial Apartments in the Draft Condominium Declaration is a narrower subset of the commercial units contained in the ROFR's definition of KOD Commercial Apartments because it does not include CA-B or CA-C.  The definition of Commercial Apartments in the

Amended Condominium Declaration is broader than the ROFR's definition of KOD Commercial Apartments because the KOD Commercial Apartments definition does not include CA-4.

43.     A "Commercial Limited Common Element" is defined in the Draft Condominium Declaration as "those areas identified herein or on the Condominium Map as being appurtenant to a Commercial Apartment." (Joint Ex. 502-A art. art. I.B.14.) This definition is excluded from the Amended Condominium Declaration.

44.     "Limited Common Elements" are defined in the Draft Condominium Declaration as "those Common Elements which are designated in this Declaration as reserved for the exclusive use of one or more Apartments to the exclusion of other Apartments; provided that, <u>except as permitted by or required by this Declaration</u> or the Master Declarations, no amendment of this Declaration materially and adversely affecting the Limited Common Element(s) appurtenant to an Apartment shall be effective without the consent of the Apartment Owner(s) directly affected." (Joint Ex. 502-A art. I.B.34 (emphasis added); Joint Ex. 513 art. I.B.30 (emphasis added).)

45.     "Common Elements" are defined as "those parts of the Project that are defined in this Declaration as Common Elements. The term Common Elements

17

includes those portions of the Project designated in this Declaration as Limited Common Elements."  (Joint Ex. 502-A art. I.B.15; Joint Ex. 513 art. I.B.14 (specifying as defined "under Article II.C.").)

46.   "Common Elements" are also described to include "any and all amenities operated to serve the Project (if any), including, without limitation, the Limited Common Elements appurtenant to the Business Apartment."  (Joint Ex. 502-A art. II.C.8; Joint Ex. 513 art. II.C.8.)

47.   It is undisputed that the Limited Common Elements and any Commercial Limited Common Elements are part of a separate and distinct freehold estate from each of the KOD Commercial Apartments because the Limited Common Elements are a subset of the Common Elements, which are owned by the unit owners within the Ko Olina Beach Villas (including homeowners and the owners of the commercial apartments) as tenants in common but controlled via an exclusive license or management agreement.  (Joint Ex. 502-A art I.B.17, art. II.B.4, art. II.C; Joint Ex. 513 art I.B.16, art. II.B.4, art. II.C.)

48.   Article II.D of the Draft Condominium Declaration, entitled "Limited Common Elements," specifically provides:

> Certain parts of the Common Elements, herein called the "Limited Common Elements," are hereby designated, set aside and reserved for the exclusive use of certain Apartments, and such Apartments shall

> have appurtenant thereto exclusive easements for the use of such
> Limited Common Elements as set forth herein.

(Joint Ex. 502-A art. II.D; Joint Ex. 513 art. II.D.)  Article II.D further describes

which Limited Common Elements are appurtenant to CA-2 and CA-3.  (Id.)

49.     Neither the Draft Condominium Declaration nor the Amended

Condominium Declaration specify any other easements appurtenant to Commercial

Apartments other than CA-2 or CA-3.

50.     Similarly, neither the Draft Condominium Declaration nor the

Amended Condominium Declaration specify that any Limited Common Elements

are appurtenant to Commercial Apartments other than CA-2 or CA-3.

51.     As stated above, the ROFR's definition of "KOD Commercial

Apartments" and the Draft and Condominium Declarations' definitions of

"Commercial Apartments" include both CA-2 and CA-3.

52.     No subsequent agreements were ever signed by Plaintiff and

Defendant, or by Defendant alone, that provided for exclusive easements

appurtenant to the KOD Commercial Apartments for the exclusive use of any

Limited Common Elements.  Accordingly, any exclusive easement to use certain

Limited Common Elements can only exist as appurtenant to CA-2 or CA-3.

53.     Article VI.H, regarding use of Common Elements,  provides that "[n]otwithstanding anything herein to the contrary, the Owner of the Apartment to which any Limited Common Element is appurtenant has the exclusive right to use such Limited Common Element unless otherwise stated herein."  (Id. art. VI.H (emphasis added).)

54.     As to CA-2 alone, Article IV, entitled "Easements," includes a section I, entitled "License to use Limited Common Elements Appurtenant to Business Apartment."  Article IV.I provides:

> Developer, as the initial owner of the Business Apartment, hereby grants to the Association, for the benefit of each of the Owners, an irrevocable, nonexclusive license to use the Limited Common Elements appurtenant to the Business Apartment[.]

(Joint Ex. 502-A art. IV.I; Joint Ex. 513 art. IV.I.)  This "irrevocable license" is made subject to the Owner of the Business Apartment's exclusive use of the Limited Common Elements appurtenant to CA-2.  The Court does not determine whether the purported license is in fact a license.  The Court also does not determine how the purported exclusive easement appurtenant to CA-2 is intended to intersect with the purported grant of an "irrevocable license" for non-exclusive use to all Owners.

20

55.     Article XXIII of the Condominium Declaration expressly reserves to Defendant the power to recharacterize the Limited Common Elements.  Article XXIII, entitled "Reserved Right to Recharacterize Limited Common Elements," specifically provides:

> The Developer shall have the <u>reserved right</u>, but not the obligation, to amend this Declaration to <u>recharacterize certain Limited Common Elements as may be appurtenant to an Apartment owned by the Developer as being Common Elements of the Project</u>.
>
> <u>The right to amend the Declaration to effect the recharacterization of any Limited Common Element appurtenant</u> to an Apartment as Common Elements shall occur at any time or times prior to December 31, 2025, and Developer may, <u>without being required to obtain the consent or joinder of any Owner</u>, lienholder or other persons, execute, deliver and file any deed and/or amendments to this Declaration or to the Condominium Map, and any and all other instruments necessary or appropriate for the purpose of carrying out the provisions or exercising the foregoing rights, powers or privileges.

(Joint. Ex. 502-A art. XXIII (emphasis added); Joint Ex. 513 art. XXIII (emphasis added).)

56.     Article III, entitled "Common Interest," specifically provides:

Each Apartment shall have appurtenant thereto an undivided percentage interest in all Common Elements of the Project . . . herein called the Common Interest, and the same proportionate share in all Common Profits and Common Expenses of the Project and for all other purposes[.]

(Joint. Ex. 502-A art. III; Joint Ex. 513 art. III.)  Accordingly, use of the Common Elements is shared by each Apartment.

57.     Article XXV of the Condominium Declaration expressly reserves to Defendant the power to designate Limited Common Elements that are appurtenant to an Apartment owned by Defendant as appurtenant to another Apartment owned by Defendant.  Article XXIII, entitled "Reserved Right to Redesignate Limited Common Elements as Appurtenant to Other Apartments," specifically provides:

> Developer shall have the reserved right, to and until December 31, 2025, to amend this Declaration to designate all or a portion of certain Limited Common Elements as may be appurtenant to any Apartment owned by Developer, to another Apartment or Apartments owned by Developer, and to execute, file and deliver any amendments to this Declaration and to the Condominium Map, as may be necessary or required to effect the same.

(Joint. Ex. 502-A art. XXV (emphasis added); Joint Ex. 513 art. XXV (emphasis added).)

58.     As stated above, Plaintiff approved of and agreed to all terms as provided in the Draft Condominium Declaration (Joint. Ex. 502 ¶ 1.(B)) that were recorded in the Amended Condominium Declaration.

59.     Plaintiff's approval of the terms provided for in the Draft Condominium Declaration was made simultaneously with Plaintiff's acquisition of its right of first refusal under the ROFR.  (Joint Ex. 510.)

60.     No terms in the ROFR, as amended, invalidate the full force and effect of the PSA or the Second Amendment to the PSA except for the waiver of paragraph 7A of the PSA, which is inapplicable to either the KOD Commercial Apartments or any easements appurtenant thereto.  (See Joint Ex. 531 ¶ 2.)

61.     Plaintiff did not allege, or offer evidence of, mutual mistake, fraud, or duress during trial.

62.     At trial, Plaintiff did not offer evidence undermining the validity of the contracts signed by Plaintiff and Defendant.

II.     Conclusions of Law[3]

63.     Whether a contract is ambiguous is a question of law for the court. Local Motion, Inc. v. Niescher, 105 F.3d 1278, 1280 (9th Cir. 1997).

64.     This Court's review is limited to the express terms of a contract unless an ambiguity exists in the contract terms.  See United Pub. Workers, AFSCME, Local 646, AFL-CIO v. Dawson Int'l, Inc., 149 P.3d 495, 508-09 (Haw. 2006); State Farm Fire & Cas. Co. v. Pac. Rent-All, Inc., 978 P.2d 753,762 (Haw. 1999);

---

[3] The Court has no need to take judicial notice of Plaintiff's Ex Parte Motion for a Temporary Restraining Order, which the Court has already ruled upon, when making the findings and conclusions herein.  The Court declines Defendant's request for judicial notice.  (Def. Closing Arg. at 21, 37-39.)

23

Amfac, Inc. v. Waikiki Beachcomber Inv. Co., 839 P.2d 10, 31-32 (Haw. 1992);

Hanagami v. China Airlines, Ltd., 688 P.2d 1139, 1144-45 (Haw. 1984).

65.     "Since the determination of whether an ambiguity exists in a contract

is to be made on an objective basis, not by the subjective contentions of parties, a

conclusion of ambiguity is not compelled by the fact that the parties to a document,

or their attorneys, have or suggest opposing interpretations of a contract, or even

disagree as to whether the contract is reasonably open to just one interpretation."

11 Williston on Contracts § 30:4 (4th ed. 1999 & Supp. 2010).  Moreover, "[t]he

existence of mutual assent or intent to accept is determined by an objective

standard."  Standard Mgmt., Inc. v. Kekona, 53 P.3d 264, 273 (Haw. 2001).

66.     The Hawai`i Supreme Court has "adopt[ed] the view allowing

extrinsic evidence, i.e., all evidence outside of the writing including parol

evidence, to be considered by the court to determine the true intent of the parties if

there is any doubt or controversy as to the meaning of the language embodying

their bargain."  Hokama v. Relinc Corp., 559 P.2d 279, 283 (Haw. 1977) (emphasis

added); see In re Lock Revocable Living Trust, 123 P.3d 1241, 1247-48 (Haw.

2005); Matter of Ikuta's Estate, 639 P.2d 400, 406 (Haw. 1981).

67.     In the absence of ambiguity or claims of fraud, duress, or mutual

mistake, extrinsic evidence is inadmissible.  See State Farm, 978 P.2d at 762.

68.     The Court finds that the PSA and the ROFR are separate and independent stand-alone contractual agreements.

69.     Upon review of the full facts presented at trial, the Court finds and concludes that the contract terms of the PSA are unambiguous.

70.     Upon review of the full facts presented at trial, the Court finds and concludes that the contract terms of the ROFR are unambiguous.

71.     Plaintiff seeks a declaration that the KOD Commercial Apartments, as referred to in the ROFR and the Option Agreements, include those easements which were appurtenant <u>to those apartments on the date the ROFR and the Option Agreements were executed</u>.

72.     It is true that in the absence of language indicating otherwise, an easement appurtenant generally passes along with the dominant lot by conveyance of the property.  <u>See</u> <u>Henmi Apartments, Inc. v. Sawyer</u>, 655 P.2d 881, 886 (Haw. App. 1982) (citation omitted).

73.     In order for the ROFR to operate to transfer easements appurtenant along with sale of the dominant estate—the KOD Commercial Apartments—easements appurtenant must have been created.

74.     As stated above, the language in the ROFR does not create or refer to easements appurtenant to the KOD Commercial Apartments.  Accordingly, the

Court must look to other sources in order to ascertain whether any easements appurtenant to the KOD Commercial Apartments that provided for exclusive use of certain Limited Common Elements were created.

75.     As explained below, the Draft and Amended Condominium Declarations specifically define the Limited Common Elements which Defendant seeks to recharacterize and any interests thereto.  In fact, the Draft and Amended Condominium Declarations affirm that the development "is held and shall be held, conveyed, mortgaged, encumbered[] . . . subject to the provisions of this Declaration . . . ."  (Joint Ex. 502-A at 2; Joint Ex. 513 at 3. (emphasis added).) Further, the Declarations provide that:

> [t]he provisions of this Declaration and the Bylaws shall constitute covenants running with the land and equitable servitudes, and shall be binding upon and shall inure to the benefit of the Developer, its successors and permitted assigns, and all subsequent owners and lessees of all or any part of the Project and their respective successors, successors-in-trust, heirs, devisees, personal representatives, executors, administrators and assigns.

(Id. at 2; Joint Ex. 513 at 4.)  As such, the Draft and Amended Declaration are properly seen as the document creating any asserted rights in easements appurtenant to the KOD Commercial Apartments for exclusive use of certain Limited Common Elements.

26

76.     The Court makes the following conclusions of law regarding Defendant's right and obligations under the PSA and under the Amended Condominium Declaration.

77.     As demonstrated above, the PSA, as amended, expressly incorporates all exhibits that were attached at the time it was signed.  Paragraph 8 of the Second Amendment to the PSA ratifies and confirms the terms of the agreement unless expressly modified, and the PSA's incorporation of all attached exhibits is thereby ratified.

78.     The Draft Condominium Declaration was incorporated into the PSA and the Second Amendment to the PSA, which merges the definitions set forth in the Draft Condominium Declaration into the Second Amendment to the PSA.  See Brooks v. Minn, 836 P.2d 1081, 1085 (Haw. 1992) (holding that a property settlement agreement that is incorporated into a decree is merged into the decree); Abramson v. Bd. of Regents, Univ. of Haw., 548 P.2d 253, 258 (Haw. 1976) ("[T]he published tenure policy of an educational institution may be incorporated by reference into the employment contract of a probationary faculty member, who may become entitled to tenure upon fulfilling the conditions of tenure policy."); Vaught v. Scottsdale Healthcare Corp. Health Plan, 546 F.3d 620, 627 (9th Cir. 2008) ("Based on general rules of contract interpretation, we interpret the Plan's

summary plan description as incorporating the EOB's review procedures by reference.").

79.     As long as a contract makes clear reference to a document, the parties may contract to incorporate terms by reference to a separate document, even one to which they are not parties, and even if the document is unsigned.  11 <u>Williston on Contracts</u>, § 30:25 (4th ed. 1999 & Supp. 2010).  When a writing refers to another document, that document becomes constructively part of the writing.  <u>Id.</u>  "Incorporation by reference makes the subject matter referred to as much a part of that which incorporates it as though set forth therein at full length."  <u>State v. Hawaiian Dredging Co.</u>, 397 P.2d 593, 606 (Haw. 1964); <u>see</u> <u>Cunha v. Ward Foods, Inc.</u>, 804 F.2d 1418, 1428 (9th Cir. 1986) ("When a document incorporates outside material by reference, the subject matter to which it refers becomes a part of the incorporating document just as if it were set out in full.").

     a.     The Draft Condominium Declaration is clearly referenced in the Second Amendment to the PSA and attached thereto as Exhibit A.

     b.     The Draft Condominium Declaration was incorporated into the Second Amendment to the PSA pursuant to paragraph 27 of the PSA and paragraph 8 of the Second Amendment to the PSA.

80.     Regardless, Plaintiff clearly approved the Draft Condominium Declaration as Exhibit A to the Second Amendment to the PSA simultaneously with the signing of the ROFR on September 1, 2005.  (Joint Ex. 502 ¶¶ 1.(B).) Therefore, Plaintiff had agreed to the descriptions of the Commercial Apartments and any rights associated with them simultaneous to its acquisition of the option to purchase those apartments pursuant to the ROFR.  Further, all terms that Plaintiff agreed to in the Draft Condominium Declaration, in relevant part, were also incorporated into the recorded Amended Condominium Declaration.

81.     The Draft and Amended Condominium Declarations describe the Limited Common Elements as "designated, set aside and reserved for the exclusive use of certain Apartments, and such Apartments shall have appurtenant thereto exclusive easements for the use of such Limited Common Elements as set forth herein."  (Joint Ex. 502-A art. II.D; Joint Ex. 513 art. II.D.)

82.     An easement is:

 . . . an interest in land in the possession of another which

(a) entitles the owner of such interest to a limited use or enjoyment of the land in which the interest exists;

(b) entitles him to protection as against third persons from interference in such use or enjoyment;

(c) is not subject to the will of the possessor of the land;

29

(d) is not a normal incident of the possession of any land possessed by the owner of the interest[;] and

(e) is capable of creation by conveyance.

Bremer v. Weeks, 85 P.3d 150, 174 (Haw. 2004) (citing Restatement of Property § 450 (1944)) (emphasis in original).

83.    If an agreement purporting to create an easement provides the owner of the servient estate with the right to terminate the easement, then a license not an easement is created for the benefit of the owner of the dominant estate.   Id. at 175.

84.    Therefore, in making its determination as to whether a transaction is an easement, a court is not bound by the characterization of the parties or the document creating the interest.

85.    The Bremer court explained:

i. Easements-Differentiated from licenses.  One having a privilege which entitles him to a limited use of land may or may not hold the privilege subject to the will of the possessor of the land. The fact that the privilege is subject to the will of the possessor renders it comparatively insecure and thereby affects the degree of protection given it as against third persons.  Its relative insignificance, arising out of the fact that it may be terminated at the will of the possessor, also enters into the consideration of the question as to whether it is such an interest in land as comes within the requirements of the statute of frauds. Accordingly, interests in land which entitle the owner thereof to the use of land in the possession of another, but which are subject to the will of the possessor, have legal attributes which are so different in their nature and extent from those of easements that such interests,

30

> though they may in many respects resemble easements, are given a
> different name and treated in a different category. Such interests are
> called licenses and are treated and discussed under that name (see
> Chapter 43).

Id. (citing Restatement of Property § 450 cmt. i) (emphasis in original).

86.     Illustrative is the opinion in State v. Johnson, 846 N.Y.S. 2d 671,

(N.Y. App. Div. 2007), wherein the court states:

> To create an easement by express grant there must be a writing
> containing plain and direct language evincing the grantor's intent to
> create a right in the nature of an easement rather than a revocable
> license.  Such writing must unequivocally establish that the grantor's
> intent was to give for all time to come a use of the servient estate to
> the dominant estate.  Additionally, if there is an ambiguity with regard
> to the permanency of the restriction placed on the servient estate, it is
> to be treated as a license or an easement in gross which is revocable at
> will by the grantor[.]

Id. at 674 (internal citations and marks omitted).

87.     Chapter 43 of the Restatement of Property defines a license as

follows:

> The term "license," as used in this Chapter, denotes an interest in land
> in the possession of another which
>
> (a)     entitles the owner of the interest to a use of the land, and
> (b)     arises from the consent of the one whose interest in the
>         land used is affected thereby, and
> (c)     is not incident to an estate in the land, and
> (d)     is not an easement

Id. at 175 n.28 (citing Restatement of Property § 512 (1944)); see also Restatement of Property § 514(b) (a license "is created to endure at the will of the possessor of the land subject to the privilege.").

88.  Further:

a license is revocable at the will or the pleasure of the servient tenant. . . . A license ordinarily may be revoked without notice and without cause, because a license is personal, and a licensee has no possessory interest in the property. A license normally may be revoked at will no matter how long it has continued.

25 Am. Jur. 2d Easements & Licenses § 122 (internal citations omitted); see also Restatement of Property § 516 ("The extent of a license is fixed by the terms of the consent which creates it."); Restatement of Property § 519 ("a license is terminable at the will of the possessor of the land subject to it."); Restatement of Property § 520 (same).

89.  Pursuant to the Draft and Amended Condominium Declarations, any Apartment Owner's "use" of an appurtenant Limited Common Element is subject to the provisions of the Declarations and bylaws.  Article XXIII of the Condominium Declaration expressly reserves to Defendant the power to recharacterize Limited Common Elements as Common Elements.  (Joint. Ex. 502-A art. XXIII; Joint Ex. 513 art. XXIII.)  The Draft and Amended Condominium Declarations, therefore, expressly contemplate modifications or alterations to some interests.  (Id.)

90.    This conclusion is not changed by the Declarations' statements in

Article II.C., entitled "Common Elements," that:

> . . . the characterization of particular areas as Common Element areas
> herein does not detract from the exclusive right of an Owner of an
> Apartment to which such areas are identified in Section D. below as
> Limited Common Elements . . . to use and control such facilities.

(Joint Ex. 502-A art. II.C.13; Joint Ex. 513 art. II.C.13.)   The Court finds this

statement serves to clarify that the characterization or description of an area as a

"Limited Common Element" supercedes the same area's characterization or

description as a "Common Element" but does not serve to take away Defendant's

right to recharacterize Limited Common Elements as Common Elements.  Article

II.C. refers only to the <u>original</u> <u>characterization</u> of an area as provided in the

Declarations and therefore does not serve to limit Defendant's right to

<u>recharacterize</u> an area.

91.    Moreover, Article XXV expressly reserves to Defendant the power to

designate Limited Common Elements that are appurtenant to an apartment owned

by Defendant as appurtenant to another apartment owned by Defendant, thereby

again making any Commercial Apartment's "exclusive use" of a Limited Common

Element revocable until Defendant as the original Owner has sold that Commercial

Apartment.  (Joint Ex. 502-A art. XXV; Joint Ex. 513 art. XXV.)

33

92.    Defendant currently owns all Commercial Apartments.  (Pl.'s Ex. 2 at CDP02698.)

93.    The Court finds that at the time the interests (labeled as "exclusive easements") for the use of certain Limited Common Elements were created in favor of the Owners of CA-2 and CA-3, Defendant had expressly reserved the right to take away any Limited Common Elements appurtenant to any Commercial Apartment and/or to redesignate any Limited Common Elements as Common Elements.  Therefore, the CA-2 and CA-3 Owners' use of the servient estate—the Limited Common Elements—is subject to the limitations provided in the Draft and Amended Declarations as the documents creating the interest and therefore subject to the will of Defendant as provided therein.  Accordingly, the interest created by the "exclusive easements" appurtenant to CA-2 and CA-3 for the use of certain Limited Common Elements appurtenant to the same is a license revocable at the will of Defendant.

94.    For all the reasons above, no exclusive easements appurtenant to any Commercial Apartment for use of that Apartment's appurtenant Limited Common Elements were created by either the Draft or Amended Condominium Declarations.

95.    Although the "possessor" of the servient estate is provided to be a joint ownership of the unit holders in the Ko Olina Beach Villas, the original

34

interests and the limitations placed on those interests were created by Declarations and subject to their limitations.

96.     The Court finds that by the Draft and Amended Condominium Declarations the Owners of CA-2 and CA-3 were granted revocable licenses for the exclusive use of the Limited Common Elements appurtenant to those Apartments, which Defendant has the right to revoke at will.

97.     No subsequent agreements were ever signed by Plaintiff and Defendant, or by Defendant alone, that provided for exclusive easements appurtenant to the KOD Commercial Apartments for the exclusive use of any Limited Common Elements.

98.     Accordingly, the Court finds that the evidence proffered at trial demonstrated Plaintiff did not contract for a fixed property interest in easements appurtenant to the KOD Commercial Apartments for exclusive use of the Limited Common Elements.

99.     Thus, because no easements were created, and instead licenses were granted for exclusive use of certain appurtenant Limited Common Elements by the Owners of CA-2 and CA-3, the ROFR could not operate to transfer appurtenant easements to Plaintiff along with the KOD Commercial Apartments as the "dominant estates."

100.    Moreover, Plaintiff has failed to present language in any of the contracts that requires Defendant to convey the KOD Commercial Apartments and any appurtenant interests exactly as they existed at the time of signing.  As explained above, the Court must rely on the language of the contracts themselves, which evidence a clear contemplation by the parties that any exclusive interest in the Limited Common Elements was impermanent.  It was Plaintiff who agreed to execute the contracts, which expressly contemplate recharacterization or modification of property interests.

101.    Accordingly, the Court finds that Plaintiff's right to the KOD Commercial Apartments does not include the right to exclusive easements appurtenant to any Commercial Apartment for the use of any Limited Common Elements.

102.    Therefore, Article XXIII Amended Condominium does not violate Plaintiff's rights under the PSA as amended or the ROFR as amended.

103.    Article XIII of the Amended Condominium Declaration provides for amendment by a 75% vote of the apartment owners.  (Joint Ex. 502-A at 30; Joint Ex. 513 at 31-32).

104.    Because Plaintiff's right to the KOD Commercial Apartments does not entitle them to exclusive easements appurtenant to the Commercial Apartments

<u>for the use of any Limited Common Elements, consent by Defendant to recharacterization pursuant to Article XXIII does not violate Plaintiff's rights under the PSA as amended or the ROFR as amended</u>.

105.   "[I]t is a fundamental rule of contract law that a competent party who signs a written instrument is bound by its terms; and in the absence of allegations of mistake, fraud, or duress, a failure to read or understand the contents of the instrument cannot relieve the signing party of the obligation imposed therein." <u>Liberty Bank v. Shimokawa</u>, 632 P.2d 289, 292 (Haw. Ct. App. 1981) (citations omitted); <u>Leong v. Kaiser Found. Hosp.</u>, 788 P.2d 164, 168 (Haw. 1990) ("[O]ne who assents to a contract is bound by it and cannot complain that he has not read it or did not know what it contained.") (citations omitted); <u>see</u> <u>also</u> <u>Courbat v. Dahana Ranch, Inc.</u>, 141 P.3d 427, 437 (Haw. 2006) (same) (citations omitted).

106.   Absent a finding of contractual ambiguity, the Court is prohibited from considering the parties' subjective intent as to use or control of the Limited Common Elements.  The Court may not make findings of fact as to the parties' intent because neither the PSA nor the ROFR are ambiguous.

107.   Because the contracts are not ambiguous, and because there has been no claim of fraud, duress, or mutual mistake, the Court is not entitled to consider extrinsic evidence of the parties' subjective intent.

37

108.   The Court makes the following conclusions of law regarding Plaintiff's rights under Sections 16 and 17 of the ROFR, as amended.

109.   A right of first refusal "limits the right of the owner to dispose freely of its property by compelling the owner to offer it first to the party who has the first right to buy.  Nor may the owner accept an offer made by a third party."  25 Williston on Contracts § 67:85 (4th ed. 2010).

110.   In Hawai`i, a "preemptive right of first refusal creates no interest in property and gives far less than does an options contract.  Whereas the option contract gives the power to compel sale, the right of first refusal merely requires the owner to offer it to the holder first, if he decides to sell at all."  Kaiser Development Co. v. City and County of Honolulu, 649 F. Supp. 926, 937 (D. Haw. 1986) (citations omitted).

111.   Conversely, an option to purchase is:

a contract whereby the owner of the property, for valuable consideration, sells the optionee the right to buy a specified property, for a specified price, within a specified time, and on the terms in the option. The option holder thus may perform or not perform the conditions at his option, has the power to force conveyance of the land, has immunity from revocation or repudiation by the optionor, and may enforce these rights in court. If options contracts do not actually provide the holder with an interest in the land, they do provide considerable value on which the holder can rely.

Kaiser Development Co., 649 F. Supp. at 936.

112.   Section 16 grants KOD an option to "acquire (or cause its designee(s) to acquire) any of the KOD Commercial Apartments not therefore to acquired by KOD pursuant to Section 1 [of the ROFR.]"   The option states that it shall be exercised upon "the fifth (5th) anniversary of the commencement of the term of the lease referred to in Section 2 [of the ROFR] and for a period of ninety (90) days after KOD's receipt from Developer . . . of the applicable construction costs thereafter[.]"  The purchase price for each apartment shall be "paid in cash and shall be the 'applicable construction cost' for such KOD Commercial Apartment[.]"  The option shall not apply to "any KOD Commercial Apartment that has previously been transferred to the AOAO for the Condominium Project (after KOD has not exercised its right of first refusal to purchase such KOD Commercial Apartment)[.]"  (Joint Ex. 522 ¶ 4.)

113.   The Section 16 option was not expressly or impliedly waived or superceded in the Second Amendment to the ROFR, which created a new Section 17.  The Second Amendment to the ROFR states that "[i]n all other respects, the Agreement, as amended hereby and the surviving term of the PSA shall remain in full force and effect, and the parties hereto do hereby ratify the terms thereof."  (Joint Ex. 531 ¶ 4.)

114.   However, the Second Amendment to the ROFR served to amend the definition of KOD Commercial Apartments from three commercial units, denominated CA-1 and CA-3, to five commercial units, denominated CA-1, CA-2, CA-3, CA-B, and CA-C.  (Joint Ex. 531 ¶ 1.)  The Second Amendment's definition of "KOD Commercial Apartment" is the operative definition under the Section 16 option.

115.   Accordingly, the Court finds that Section 16 provides Plaintiff a purchase option, wherein Plaintiff may force Defendant to sell the KOD Commercial Apartments for construction costs, upon a certain date.

116.   Section 17 of the ROFR also grants Plaintiff an option to purchase the KOD Commercial Apartments.

117.   The first part of Section 17 states:

Developer covenants not to sell, transfer or otherwise convey (or offer to sell, transfer or otherwise convey) its interest in any of the KOD Commercial Apartments to any person or entity other than KOD or the AOAO . . . unless both KOD and the AOAO have been provided with the opportunity to purchase such KOD Commercial Apartment(s) and declined to do so.

(Second Amendment to the ROFR, Joint Ex. 531 ¶ 3.)  This statement in Section 17 constitutes a right of first refusal whereby Defendant must first provide Plaintiff and AOAO with the option to purchase any KOD Commercial Apartments before

40

Defendant sells, transfers, or conveys those apartments.  This right of first refusal

is a reaffirmation of Plaintiff's right of first refusal in Section 1 of the ROFR.

118.   Section 17 also contains an option.  Section 17 provides that

"[Defendant] further covenants to KOD" that Defendant will present an offer to the

AOAO for the AOAO to purchase the KOD Commercial Apartments for a

purchase price of $1 within thirty days after the earliest of: (1) the closing of sale

of the final residential condominium; (2) December 31, 2012; (3) termination of

the resort management agreement or the hospitality services agreements; or (4) at

least forty five days prior to an offer of the KOD Commercial Apartments for sale

to a third-party.  (Joint Ex. 531 ¶ 3.)  Section 17 then states "[t]he AOAO Offer

will trigger KOD's right of first refusal as set forth in Section 1 of this Agreement

and in accordance with subsection 1(c) thereof."  (Id.)

119.   Section 1 of the ROFR provides that should Defendant decide to sell,

lease, or otherwise transfer one or more KOD Commercial Apartments, Defendant

shall first offer to sell KOD the KOD Commercial Apartments on certain terms and

conditions set forth in a "Sale Notice."  (Joint Ex. 510 ¶ 1(a)-(c).)  The terms and

conditions in the Sale Notice shall be based on, inter alia, the "agreement pursuant

to which such sale, lease, or other transfer is intended to be effected[.]" (Id. ¶1(a).)

The "purchase price" shall be the lesser of the "purchase price specified to be paid

41

by a prospective purchaser and the actual construction cost incurred by the original Developer . . . ."  (Id. ¶1(c), (g).)  Accordingly, pursuant to Section 17, the offer price by Defendant to Plaintiff shall be $1.  (Joint Ex. 531 ¶ 3.)

120.   Section 17 is not dependant upon Defendant's decision to sell, instead, a specific time period is specified by which Defendant covenants to Plaintiff that it will offer to sell the KOD Commercial Apartments to the AOAO, thereby triggering Plaintiff's right of first refusal at a price certain of $1.  Therefore, Section 17 provides Plaintiff a purchase option, wherein Plaintiff may force Defendant to sell the KOD Commercial Apartments to it for $1, upon the happing of the earliest of certain events and Defendant's provision of the AOAO Offer.

121.   Section 17 option does not apply to any KOD Commercial Apartment which have been transferred to a third-party after both KOD and AOAO were provided with the opportunity to purchase the apartment and declined to do so. (Joint Ex. 531 ¶ 3.)

122.   Based on the foregoing, the Court renders judgment as set forth below.

123.   As to Count I of Plaintiff's Second Amended Complaint, the Court finds in favor of Defendant in part and in favor of Plaintiff in part.

a.     Plaintiff's contractual rights to the KOD Commercial

Apartments do not entitle Plaintiff to exclusive easements

appurtenant to the KOD Commercial Apartments for the use of

any Limited Common Elements.  The Court finds in favor of

Defendant on this issue.

b.     Plaintiff has the right to purchase the KOD Commercial

Apartments upon the happening of several events, as described

in Sections 16 and 17 of the ROFR, as amended, and as

recounted herein.  The Court finds in favor of Plaintiff on this

issue.

124.   As to Count II of Plaintiff's Second Amended Complaint, the Court

finds in favor of Plaintiff.

a.     Pursuant to Section 16 of the First Amendment to the ROFR,

Plaintiff has an option to purchase the KOD Commercial

Apartments to be exercised on the "fifth anniversary of the

commencement of the term of the lease referred to in Section 2"

of the ROFR for the "applicable construction costs" of the KOD

Commercial Apartments.  The Court finds in favor of Plaintiff

on this issue.

43

b.      Pursuant to Section 17 of the Second Amendment to the ROFR, Plaintiff has a an option to purchase the KOD Commercial Apartments for $1 upon the happing of the earliest of certain events, as further recounted herein.  The Court finds in favor of Plaintiff on this issue.

c.      Section 16 was not rendered moot by Section 17, which simply provides KOD an alternative method for acquiring the KOD Commercial Apartments.  The Court finds in favor of Plaintiff on this issue.

d.      Defendant is not obligated retain exclusive easements appurtenant to the Commercial Apartments for the use of certain Limited Common Elements that were appurtenant to the KOD Commercial Apartments on the date the agreements were executed.  In fact, no easements appurtenant to the KOD Commercial Apartments were ever created for the use of any Limited Common Elements.  Therefore, Plaintiff's acquisition of its option to buy the KOD Commercial Apartments cannot serve to provide Plaintiff with a fixed property interest in, or upon execution to transfer, any exclusive easements

44

appurtenant to the Commercial Apartments for the use of any

Limited Common Elements.  The Court finds in favor of

Defendant on this issue.

e.       Defendant is not contractually precluded from voting in favor

of an amendment to the Condominium Declaration to

recharacterize the Limited Common Elements under Article

XIII, and Defendant is not contractually precluded from

recharacterizing the Limited Common Elements under Article

XXIII.  The Court finds in favor of Defendant on this issue.

125.   As to Count III of Plaintiff's Second Amended Complaint, the Court

finds in favor of Defendant.  Plaintiff did not demonstrate at trial that it is entitled

to prevail under the doctrine of promissory estoppel.  The four elements of

promissory estoppel are: (1) there was a promise; (2) the promisor must, at the time

he or she made the promise, foresee that the promisee would rely upon the

promise; (3) the promisee does in fact rely upon the promisor's promise; and (4)

enforcement of the promise is necessary to avoid injustice.  Gonsalves v. Nissan

Motor Corp. In Hawaii, Ltd., 58 P.3d 1196, 1211-12 (Haw. 2002).

a.       At trial, Plaintiff did not argue that it should prevail by

promissory estoppel, and Plaintiff's only specific mention of

promissory estoppel is relegated to a footnote in Plaintiff's closing arguments without evidentiary support.  (Pl. Closing Arg. at 29 n.18.)

b.      Furthermore, upon review of the trial record, the Court concludes that Plaintiff did not demonstrate any particular promise by Defendant that Plaintiff relied upon to its detriment, or that enforcement of any particular promise is necessary to avoid injustice.

126.    As to Count IV of Plaintiff's Second Amended Complaint, the Court finds in favor of Defendant.  Plaintiff did not demonstrate that Defendant violated the implied covenant of good faith and fair deal.  "[E]very contract contains an implied covenant of good faith and fair dealing that neither party will do anything that will deprive the other of the benefits of the agreement."  Best Place Inc. v. Penn Am. Ins. Co., 920 P.2d 334, 337-38 (Haw. 1996).

a.      At trial, Plaintiff did not argue that it should prevail on this ground, and Plaintiff's only specific mention of breach of good faith and fair dealing is relegated to a footnote in Plaintiff's closing arguments without evidentiary support.  (Pl. Closing Arg. at 29 n.18.)

46

b. Upon review of the record, Plaintiff has not demonstrated that Defendant acted in bad faith in contemplation of and in execution of their contracts.  To the contrary, the Court concludes that Defendant has not taken any action in contravention to the contract terms.

127. As to the remainder of Count I of Defendant's Counterclaim, the Court finds in favor of Defendant for the reasons already set forth with respect to the non-existence of any exclusive easements appurtenant to the Commercial Apartments for the use of certain Limited Common Elements.

128. As to Count II of Defendant's Counterclaim, the Court finds in favor of Defendant for the reasons already set forth with respect to the non-existence of any exclusive easements appurtenant to the Commercial Apartments for the use of certain Limited Common Elements and Defendant's unburdened ability to recharacterize the Limited Common Elements.

129. As to Count VI of Defendant's Counterclaim, this claim is dismissed with prejudice for lack of prosecution.  Defendant did not proffer any evidence at trial as to its right to vote unsold units specifically pursuant to HRS § 514B-106.  Moreover, in Defendant's closing arguments with respect to "legal issues for

consideration," Defendant does not mention, reference, or seek relief pursuant to HRS § 514B-106.

130.   As to Count IX of Defendant's Counterclaim, the Court finds in favor of Plaintiff.  Defendant stipulated to diversity jurisdiction.  The Court further finds that Plaintiff's action was not frivolous.  To the contrary, Plaintiff has prevailed on several of its causes of action.  See Lee v. Haw. Pac. Health, 216 P.3d 1258, 1269 (Haw. Ct. App. 2009) ("A frivolous claim is one 'manifestly and palpably without merit, so as to indicate bad faith on the pleader's part such that argument to the court was not required.'" (quoting Doe v. Doe, 188 P.3d 782, 799 (Haw. Ct. App. 2008))).

131.   As to Count X of Defendant's Counterclaim, the Court finds in favor of Plaintiff.  Defendant has not established that Plaintiff's action was malicious or outrageous, and punitive damages are not warranted.  See Lee v. Aiu, 85 936 P.2d 655, 670 (Haw. 1997); Young v. Allstate Ins. Co., 198 P.3d 666, 688 (Haw. 2008).

III.   Conclusion

Judgment is hereby rendered in favor of Plaintiff in part and Defendant in part as follows.

With respect to Plaintiff's Second Amended Complaint, the Court finds in favor of:

1.     Defendant in part and Plaintiff in part as to Count I.  Judgment is entered in favor of Defendant as to whether Plaintiff is contractually entitled to exclusive easements appurtenant to the Commercial Apartments for the use of certain Limited Common Elements as detailed herein.  Judgment is entered in favor of Plaintiff as to Plaintiff's rights to purchase the KOD Commercial Apartments as detailed herein.

2.     Defendant in part and Plaintiff in part as to Count II.  Judgment is entered in favor of Plaintiff as to Section 17's provision of an option to purchase the KOD Commercial Apartments.  Judgment is entered in favor of Defendant as to whether Defendant is obligated retain exclusive easements appurtenant to the KOD Commercial Apartments for the use of certain Limited Common Elements, and whether Defendant is precluded from recharacterizing the Limited Common Elements.  Judgment is entered in favor of Plaintiff as to whether Section 16 is an option and as to whether Section 16 was rendered moot by Section 17.

3.     Defendant as to Count III.

4.     Defendant as to Count IV.

With respect to Defendant's Counterclaims adjudicated at trial, the Court finds in favor of:

1.     Defendant as to Count I.

49

2.      Defendant as to Count II.

3.      Plaintiff as to Count IX.

4.      Plaintiff as to Count X.

Count VI of Defendant's Counterclaim is hereby dismissed with prejudice for lack of prosecution.

All claims against Doe defendants are hereby dismissed with prejudice for lack of prosecution.

The Clerk of the Court is directed to enter judgment in accordance with these Findings of Fact and Conclusions of Law.

The parties may apply to the Court by separate motion for a determination of prevailing party status and entitlement to attorneys' fees and costs.

IT IS SO ORDERED.

DATED:  Honolulu, Hawai`i, October 29, 2010.



_____
David Alan Ezra
United States District Judge

Ko Olina Development, LLC v. Centex Homes, et al., Civ. No. 09-00272 DAE-LEK; FINDINGS OF FACT AND CONCLUSIONS OF LAW