IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

KO OLINA DEVELOPMENT, LLC, )    CV. NO. 09-00272 DAE-LEK
a Delaware limited liability company, )
                                         )
           Plaintiff,         )
                                         )
    vs.                      )
                                       )
CENTEX HOMES, a Nevada general )
partnership, JOHN DOES 1–20;    )
JANE DOES 1–20; DOE        )
CORPORATIONS and OTHER    )
ENTITIES 1–20,           )
                                       )
          Defendants.      )
_____ )
                                       )

ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR ATTORNEYS' FEES
AND RELATED NON-TAXABLE EXPENSES

        Pursuant to Local Rule 7.2(d), the Court finds this matter suitable for

disposition without a hearing.  Before the Court is Defendant Centex Homes'

("Centex" or "Defendant") Motion for Attorneys' Fees and Related Non-Taxable

Expenses ("Motion"), filed on November 29, 2010.  Defendant requests an award

of $918,129.48 in attorneys' fees and $26,435.74 in non-taxable costs.  Plaintiff Ko

Olina Development, LLC ("KOD" or "Plaintiff") filed its memorandum in

opposition on December 13, 2010, and Defendant filed its reply on December 20,

2010.  Plaintiff filed a supplemental memorandum in opposition on January 18,

2011, and Defendant filed a reply thereto on January 27, 2011.  After reviewing the

parties' submissions and the relevant case law, the Court GRANTS IN PART and

DENIES IN PART Defendant's Motion.  The Court AWARDS Defendant

$499,993.94 in attorneys' fees and $9,173.61 in costs, for a total award of

$509,167.55.

<u>BACKGROUND</u>

The parties and the Court are familiar with the factual and procedural

background of this case.  The Court will therefore only discuss the background that

is relevant to the instant motion.

2.     The instant lawsuit was filed on June 15, 2009.  A
Second Amended Complaint was filed October 16, 2009.[1]  Plaintiff
seeks injunctive relief and damages as to a dispute over a parcel of
land known as Ko Olina Resort Parcel 53 and as to exclusive
easements appurtenant to certain "KOD Commercial Apartments" on
Parcel 53 for the use of certain "Limited Common Elements"
appurtenant to the same.
3.     Plaintiff additionally claims that Section 17 of the Right
of First Refusal, Purchase Option, Agreement of Lease ("ROFR")
(Joint Ex. 510), as created by the Second Amendment to the ROFR

---

[1] Ko Olina Realty, LLC ("KOR") was originally a second plaintiff in this
action but was terminated on October 16, 2009 upon the filing of KOD's Second
Amended Complaint.  Despite the termination of KOR as a plaintiff, and KOR's
absence from the Second Amended Complaint, KOR is often referred to as an
additional plaintiff.

(Joint Ex. 531), provides Plaintiff with an option, not a right of first refusal, to purchase the "KOD Commercial Apartments."

4.     The term "KOD Commercial Apartments" refers to those commercial apartments designated as CA-l ,CA-2, CA-3, CA-B, and CA-C within the Ko Olina Beach Villas. (Joint Ex. 531.)

5.     Plaintiff asserts that its right to purchase the KOD Commercial Apartments under the ROFR, together with the ROFR's First (Joint Ex. 522) and Second (Joint Ex. 531) Amendments, includes the right to exclusive use of the easements appurtenant to those apartments on the day on which Plaintiff acquired the option . . . . Accordingly, the parties' dispute is whether Plaintiff's right to purchase the KOD Commercial Apartments includes an interest in easements appurtenant to the KOD Commercial Apartments for the exclusive use of certain Limited Common Elements, not whether KOD has the right to purchase the fee to the Limited Common Elements or the Limited Common Elements per se.

6.     Through this action, Plaintiff seeks to prevent Defendant from recharacterizing the Limited Common Elements as Common Elements.  Plaintiff argues that Defendant's recharacterization of the Limited Common Elements to Common Elements would violate Defendant's contractual duties to Plaintiff because Plaintiff allegedly has a fixed property interest in the KOD Commercial Apartments (and any appurtenant easements thereto) as they existed on the day KOD acquired its option to purchase those apartments.
    . . . .

10.    On July 6, 2009, Defendant filed a Counterclaim.  By Court order on July 7, 2010, the parties stipulated to partially dismiss Defendant's Counterclaim with prejudice.  The dismissal included multiple paragraphs within the Counterclaim, as well as Count I ¶ 4(c), Count III, Count IV, Count VII, Count VIII, and Counts IX and X as relating to the residential apartments.  Count V is deemed dismissed with prejudice pursuant to the parties' stipulation to diversity jurisdiction on July 29, 2010.  This action went to trial on portions of Counts I, II, VI, IX, and X.

("FFCL," Doc. # 386, ¶¶ 2–10.)

After a non-jury trial from August 3–6, 2010, the Court ultimately found for Plaintiff in part and for Defendant in part as to the claims in Plaintiff's Second Amended Complaint and as to Defendant's Counterclaims.[1] As to Counts I and II of the Second Amended Complaint, the Court found in favor of Plaintiff in part and in favor of Defendant in part. The Court found in favor of Defendant as to Counts III and IV of the Second Amended Complaint. With respect to Defendant's Counterclaim, the Court found in favor of Defendant as to Counts I and II and in favor of Plaintiff as to Counts IX and X. The Court also dismissed Count VI of Defendant's Counterclaim for lack of prosecution. (FFCL ¶¶ 123–31.)

On October 29, 2010, the Clerk of the Court entered final judgment in favor of Plaintiff in part and in favor of Defendant in part pursuant to the FFCL and the Order: (1) Granting in Part and Denying in Part Without Prejudice Centex's Motion for Summary Judgment; (2) Denying Without Prejudice KOD's First Motion for Partial Summary Judgment; (3) Denying KOD's Second Motion for Partial Summary Judgment; and (4) Denying Without Prejudice KOD's Third

---

[1] The Court issued the original Findings of Fact and Conclusions of Law on August 26, 2010 (Doc. # 352), but withdrew it after consideration of Plaintiff's Motion for Reconsideration, filed September 15, 2010 (Doc. # 370). (Doc. # 385.) Unless expressly stated, all references to the Findings of Fact and Conclusions of Law refer to the substituted document filed on October 29, 2010. (Doc. # 386.)

Motion for Summary Judgment, filed June 8, 2010 ("Summary Judgment Order").[2] (Doc. # 387.)

The instant motion followed.[3]  In the Motion, Defendant argues that, under Hawaii law, it is the prevailing party in this action.  Defendant contends that it is entitled to its reasonable attorneys' fees and costs in this action pursuant to the ROFR, the Purchase and Sale Agreement between Plaintiff and Defendant dated December 23, 2004 ("PSA"), and Haw. Rev. Stat. § 607-14.  Defendant further contends that the twenty-five percent limitation set forth in § 607-14 does not apply in this case because monetary liability was not at issue.  Defendant asserts that its requested hourly rates and number of hours expended are reasonable, and Defendant emphasizes that it sought to limit its attorneys' fees and costs.  Finally, Defendant argues that it is entitled to all of its non-taxable costs.

---

[2] In the FFCL, the Court found that all of the findings in the Summary Judgment Order, except for two, were inaccurate or inapplicable.  (FFCL ¶ 21.)

[3] On September 9, 2010, Defendant filed a motion for attorneys' fees based on the original Findings of Fact and Conclusions of Law.  (Doc. # 361.)  On November 10, 2010, U.S. District Judge Leslie E. Kobayashi denied the motion as moot in light of this Court's withdrawal of the original Findings of Fact and Conclusions of Law.  (Doc. # 397.)  Judge Kobayashi gave Defendant until November 29, 2010 to file a new motion for attorneys' fees based on the October 29, 2010 Findings of Fact and Conclusions of Law.

In its Opposition, Plaintiff argues that Defendant is not the prevailing party in this action and therefore Defendant is not entitled to an award of attorneys' fees. Plaintiff argues that there were two major issues in this action: the recharacterization of the Limited Common Elements, and whether Plaintiff had an option to purchase the Commercial Apartments upon the happening of certain events. Plaintiff emphasizes that it prevailed on the second issue and that this Court directed the entry of judgment in favor of both parties. Further, Plaintiff argues that Defendant is not entitled to attorneys' fees and costs pursuant to the ROFR or the PSA because neither the Second Amended Complaint nor the Counterclaim sought to enforce rights under the ROFR or the PSA. Plaintiff also argues that the claims in this case do not sound in the nature of assumpsit. Plaintiff contends that if the Court is inclined to find that some of the claims in this case sound in assumpsit, the award of attorneys' fees must be apportioned between assumpsit claims and non-assumpsit claims. If the Court is inclined to award attorneys' fees to Defendant, Plaintiff urges the Court to deny fees that: have a suspect basis; are excessive or duplicative; relate to work performed outside of the litigation; relate to matters that were settled; relate to matters that are premature; reflect clerical or ministerial work; or are inadequately described or block billed.

Finally, Plaintiff argues that Defendant's requested non-taxable costs are not recoverable.

In its reply, Defendant argues that, although there were two primary issues in this case, the recharacterization of the Limited Common Elements has always been the main disputed issue. Defendant asserts that because it prevailed on this issue, it is therefore entitled to its attorneys' fees and costs because in this action Plaintiff attempted to stop Defendant from exercising its rights under the ROFR. Defendant contends that the Court need not even address whether the claims in this case sound in assumpsit because of the contractual entitlement to attorneys' fees. Defendant argues that its itemization of fees was proper, and it reiterates that all of the time incurred in this case was reasonable in the exercise of counsel's sound billing judgment. Finally, Defendant argues that Plaintiff's objections to the claimed non-taxable costs are misplaced because Plaintiff's cited authorities relate to claims for taxable costs. Defendant reiterates that all of its requested non-taxable costs are compensable under the ROFR.

The parties' supplemental memoranda addressed Defendant's January 14, 2011 Motion for Leave to Extend Time to Appeal (Doc. # 429), and whether the parties' positions with regard to that motion affect the analysis of the entitlement to attorneys' fees and costs.

## DISCUSSION

I.    <u>Attorneys' Fees</u>

    A.    <u>Entitlement to Attorneys' Fees</u>

        The Court has jurisdiction over this case pursuant to 28 U.S.C.

§ 1332.  (FFCL ¶ 7.)  A federal court sitting in diversity must apply state law in

determining whether the prevailing party is entitled to attorneys' fees.  <u>Farmers Ins.</u>

<u>Exch. v. Law Offices of Conrado Joe Sayas, Jr.</u>, 250 F.3d 1234, 1236 (9th Cir.

2001).  Under Hawaii law, "[o]rdinarily, attorneys' fees cannot be awarded as

damages or costs unless so provided by statute, stipulation, or agreement."

<u>Stanford Carr Dev. Corp. v. Unity House, Inc.</u>, 141 P.3d 459, 478 (Haw. 2006)

(citation and quotation marks omitted).  In the instant case, Defendant seeks an

award of fees pursuant to Haw. Rev. Stat. § 607-14 and the provisions of its

agreements with Plaintiff.

        1.    <u>Haw. Rev. Stat. § 607-14</u>

        Section 607-14 states in pertinent part:

> In all the courts, in all actions in the nature of assumpsit and in all
> actions on a promissory note <u>or other contract in writing that provides</u>
> <u>for an attorney's fee</u>, there shall be taxed as attorneys' fees, to be paid
> by the losing party and to be included in the sum for which execution
> may issue, a fee that the court determines to be reasonable; provided
> that the attorney representing the prevailing party shall submit to the
> court an affidavit stating the amount of time the attorney spent on the

8

> action and the amount of time the attorney is likely to spend to obtain
> a final written judgment, or, if the fee is not based on an hourly rate,
> the amount of the agreed upon fee. The court shall then tax attorneys'
> fees, which the court determines to be reasonable, to be paid by the
> losing party; provided that this amount shall not exceed twenty-five
> per cent of the judgment.

(Emphasis added). If practicable, a court awarding attorneys' fees pursuant to

statute must apportion the fees sought between claims for which attorneys' fees are

recoverable and claims for which fees are not recoverable. Porter v. Hu, 169 P.3d

994, 1018 (Haw. Ct. App. 2007) (citing Blair v. Ing, 31 P.3d 184, 189 (Haw.

2001)).

> The ROFR, as amended, states:

> If a lawsuit or other proceeding is commenced by any party to enforce
> any of its rights under this Agreement, the prevailing party in that
> lawsuit or other proceeding shall be entitled to recover its reasonable
> attorneys' fees and costs of litigation from the other party to the extent
> permitted by applicable law and the Rules of Court.

(ROFR at 6 ¶ 6.) The PSA contains an identical provision. (PSA at 34 ¶ 26.)

> Plaintiff argues that Defendant is not entitled to attorneys' fees under

paragraph 6 of the ROFR because

> [n]either the SAC nor Defendant's Counterclaim sought to enforce
> any of the rights or obligations under the ROFR. On the contrary, this
> action sought only a declaration as to what those rights and
> obligations might be. Indeed, Plaintiff did not assert that Defendant
> had breached a contract (express or implied), and did not seek
> damages based upon any such breach.

(Opp'n at 14 (citations omitted).)  It is true that, at <u>trial</u>, Plaintiff only sought declaratory and injunctive relief pursuant to the parties' stipulation.  (FFCL ¶¶ 23, 125(a) (noting that Plaintiff did not argue during trial that it should prevail by promissory estoppel).)  The parties, however, reserved the right to seek attorneys' fees if they prevailed, (Doc. # 335 at 5), indicating that the parties did not contemplate that the waiver of the right to seek damages constituted a waiver of any entitlement to attorneys' fees.  Further, paragraph 6 refers to any action <u>commenced</u> to enforce a party's rights.  The Second Amended Complaint did seek damages, but only in connection with Count IV, breach of the duty of good faith and fair dealing.  (SAC ¶ 69.)  Count III of the Second Amended Complaint alleged that "[a]s a direct and proximate result of Centex's repudiation of the representations and promises, Plaintiff has been and will continue to be damaged, such that it would be inequitable not to enforce the ROFR and the Option Agreements."[4]  (<u>Id.</u> ¶ 64.)  Thus, the action that Plaintiff commenced did seek to enforce their rights under the ROFR and the Option Agreements.  Counts I and II of the Counterclaim sought a determination of rights in response to Plaintiff's attempt to enforce the ROFR and Option Agreements and can be fairly

---

[4] The parties refer to the First (Joint Ex. 522) and Second Amendments (Joint Ex. 531) to the ROFR as the "Option Agreements."

characterized as Defendant's attempt to enforce its rights under those agreements. The Court therefore concludes that Defendant, as the prevailing party in this action, is entitled to recover its attorneys' fees and costs pursuant to paragraph 6 of the ROFR.

2.    Prevailing Party

The Hawaii courts have noted that "[i]n general, a party in whose favor judgment is rendered by the district court is the prevailing party in that court, plaintiff or defendant, as the case may be . . . ." MFD Partners v. Murphy, 850 P.2d 713, 716 (Haw. Ct. App. 1992) (citations and quotation marks omitted); see also Kamalu v. Paren, Inc., 132 P.3d 378, 387 (Haw. 2006) ("In sum, a prevailing party having 'obtained' 'a final judgment' 'against the State,' we hold that the court may award the prevailing party its 'actual disbursements' pursuant to [Haw. Rev. Stat.] §§ 607-9 and 607-24 . . . ."); Village Park Cmty. Ass'n v. Nishimura, 122 P.3d 267, 283 (Haw. Ct. App. 2005).

In MFD Partners, the Hawaii Intermediate Court of Appeals held that the plaintiffs, who only obtained nominal damages, were the prevailing party for purposes of an award of attorneys' fees and costs because they prevailed on the two principal issues in the case. 850 P.2d at 716. The court noted:

> [A]s a general rule . . . "where a party prevails on the <u>disputed main issue [in a case], even though not to the extent of his original contention,</u> he will be deemed to be the successful party for the purpose of taxing costs and attorney's fees." <u>Food Pantry, Ltd. [v. Waikiki Bus. Plaza, Inc.],</u> 575 P.2d [869,] 879 [(Haw. 1978)]. The trial court is required to first identify the principle issues raised by the pleadings and proof in a particular case, and then determine, on balance, which party prevailed on the issues. <u>Id.</u>

<u>Id.</u> (emphases added).

The Ninth Circuit Court of Appeals has noted that this rule applies in "complex litigation" and that in such cases

> Hawaiian courts focus on which party prevailed on the "disputed main issue." <u>Food Pantry, Ltd. v. Waikiki Bus. Plaza, Inc.,</u> 58 Haw. 606, 575 P.2d 869, 879 (1978). The "disputed main issue," in turn, is identified by looking to "the principal issues raised by the pleadings and proof in a particular case . . . ." <u>Fought & Co., Inc. v. Steel Eng'g & Erection, Inc.,</u> 87 Hawai`i 37, 951 P.2d 487, 503 (1998) (quoting <u>MFD Partners v. Murphy,</u> 9 Haw. App. 509, 850 P.2d 713, 716 (1992)). Thus, the "prevailing party" is the party that succeeds on the issue or issues that are (1) the "principal" issues raised in the litigation and (2) disputed by the parties.

<u>In re Hoopai,</u> 581 F.3d 1090, 1102 (9th Cir. 2009).

Plaintiff acknowledges that <u>MFD Partners</u> applies in the instant case, but Plaintiff argues that the instant case was essentially a tie and therefore there is no prevailing party for purposes of an award of attorneys' fees. (Opp'n at 1.) According to Plaintiff, there were two disputed main issues in this case, and Plaintiff and Defendant each prevailed on one: "(1) whether, in contradiction to

Plaintiff's option rights, Defendant could recharacterize the limited common elements . . . that were appurtenant to certain of the KOD Commercial Apartments; and (2) whether Plaintiff had the right to purchase the KOD Commercial Apartments unencumbered by covenants that [sic] restrictions that Defendant sought to impose."  (Id. at 2.)

The Court characterized the primary claims in this case as follows: (1) "Plaintiff seeks injunctive relief and damages as to a dispute over a parcel of land known as Ko Olina Resort Parcel 53 and as to exclusive easements appurtenant to certain 'KOD Commercial Apartments' on Parcel 53 for the use of certain 'Limited Common Elements' appurtenant to the same;" and (2) "Plaintiff additionally claims that Section 17 of the . . . [ROFR], as created by the Second Amendment to the ROFR, provides Plaintiff with an option, not a right of first refusal, to purchase the 'KOD Commercial Apartments.'"  (FFCL ¶¶ 2–3.)  Framed in terms of issues, as required in the MFD Partners analysis, the principle issues were: (1) whether Plaintiff was entitled to exclusive easements appurtenant to the KOD Commercial Apartments for the use of any Limited Common Elements which would prevent Defendant from recharacterizing the Limited Common Elements to Common Elements; and (2) whether Plaintiff had an option, not a right of first refusal, to purchase the KOD Commercial Apartments.  The Court ruled in favor of

Defendant on the first issue and in favor of Plaintiff on the second issue. (Id. at 43–45.)

A closer examination of the issues and the history of this case, however, reveals that the true aim of the second issue was largely related to the first issue. Thus, Plaintiff obtained only partial success on the second issue because of Defendant's success on the first issue. The relationship between the two issues is apparent in the FFCL, which states: "the parties' dispute is whether Plaintiff's right to purchase the KOD Commercial Apartments includes an interest in easements appurtenant to the KOD Commercial Apartments for the exclusive use of certain Limited Common Elements," and "[t]hrough this action, Plaintiff seeks to prevent Defendant from recharacterizing the Limited Common Elements as Common Elements." (Id. at ¶¶ 5–6.)

The emphasis on the recharacterization of the Limited Common Elements was apparent from the outset of the case. Less than two weeks after filing the original Complaint, Plaintiffs filed an Ex Parte Motion for a Temporary Restraining Order and Motion for Injunctive Relief to prevent Defendant

> from joining in, voting for and/or filing an amendment . . . to the Amended and Restated Declaration of Condominium Property Regime of Beach Villas at Ko Olina and Condominium Map . . . that would either (1) alter the uses of the KOD Commercial Apartments . . . and/or (2) convert any of the limited common elements, and the

exclusive easement rights therein, appurtenant and attached to the
KOD Commercial Apartments . . . into common elements . . . .

(Doc. # 6-1, at 1–2.)

Thus, having considered the principle issues in the pleadings and proof in this case, this Court determines, on balance, that the primary issue was the recharacterization of the Limited Common Elements. Defendant prevailed on this issue. The Court therefore determines that Defendant is the prevailing party for purposes of an award of attorneys' fees and non-taxable costs.

### 3. Apportionment

The Hawaii Intermediate Court of Appeals has stated:

"When a cause of action for which attorney fees are provided by statute is joined with other causes of action for which attorney fees are not permitted, the prevailing party may recover only on the statutory cause of action. However, the joinder of causes of action should not dilute the right to attorney fees. Such fees need not be apportioned when incurred for representation of an issue common to both a cause of action for which fees are permitted and one for which they are not. All expenses incurred on the common issues qualify for an award. When the liability issues are so interrelated that it would have been impossible to separate them into claims for which attorney fees are properly awarded and claims for which they are not, then allocation is not required."

Porter, 169 P.3d at 1021 (quoting Akins v. Enter. Rent-A-Car Co., 79 Cal. App. 4th 1127, 1133 (Cal. Ct. App. 2000)). In Porter, the court noted that the plaintiffs' claims "were based on a common core of facts, occurred roughly within the same

two-month span of time, and were based on similar legal theories[,]" and that

"counsels' time was devoted largely to the litigation as a whole and not divisible

into discrete slivers neatly matching each claim advanced." Id. The court held that

the circuit court did not abuse its discretion in awarding the plaintiffs fifty percent

of their requested fees for their Haw. Rev. Stat. Chapter 481A claim, see id. at

1022, even though it was only one of several claims, see id. at 999–1000 (listing

claims).

      This Court therefore must apportion Defendant's attorneys' fees to

exclude the fees attributable to work that is not compensable, either because

attorneys' fees are not available for a cause of action or because Defendant did not

prevail on a cause of action.

      In the Second Amended Complaint: Count I sought declaratory relief

regarding the ROFR, as amended; Count II sought declaratory relief regarding the

Option Agreements, as amended; Count III alleged a promissory estoppel claim;

and Count IV alleged a claim for breach of the duty of good faith and fair dealing.

Counts I and II therefore sought a determination of Plaintiff's rights under the

ROFR and the Option Agreements, and Count III sought to enforce those rights

through promissory estoppel. The Court therefore finds that attorneys' fees and

costs for Count I, Count II, and Count III of the Second Amended Complaint are

available under paragraph 6 of the ROFR. Count IV, which sought damages for the tort claim of breach of the duty of good faith and fair dealing, is not a claim to enforce the ROFR or the PSA. Defendant has not cited any other authority for an award of attorneys' fees and costs. The Court therefore finds that attorneys' fees and costs are not available for Count IV.

As to the Counterclaim: Count I sought declaratory relief regarding the ROFR, as amended; Count II sought declaratory relief regarding the Amended and Restated Declaration of Condominium Property Regime of Beach Villas at Ko Olina, and Condominium Map, dated March 7, 2007, and filed with the Land Court on April 11, 2007 (the "Amended Condominium Declaration") (Joint Ex. 513); Count III sought declaratory relief regarding the Display Center License Agreement ("DCLA"), as amended (Doc. # 18, Exs. H–K); Count IV sought declaratory relief regarding Defendant's letter of May 12, 2009, submitted pursuant to the third amendment to the DCLA (Id., Ex. L); Count V sought a declaration that there was no federal jurisdiction over this case; Count VI sought a declaration that Defendant had the statutory right to vote its unsold units; Count VII alleged a claim for interference with prospective contractual relations; Count VIII alleged a claim for abuse of process; Count IX sought a finding that Plaintiff's action was frivolous; and Count X sought punitive damages.

As discussed, <u>supra</u>, Counts I and II of the Counterclaim sought to enforce Defendant's rights under the ROFR and the Option Agreements. The Court therefore finds that attorneys' fees and costs for these counts are available under paragraph 6 of the ROFR.

Counts III, IV, VI, VII, and VIII of the Counterclaim, and Counts IX and X, as they related to the residential apartments, are unrelated to the ROFR and the Option Agreements and did not seek to enforce rights under those agreements or under the PSA. Further, the parties stipulated to dismiss Counts III, IV, VII, and VIII and Counts IX and X as they related to the residential apartments, and the Court dismissed Count VI for lack of prosecution. (FFCL ¶¶ 10, 129.) Count V of the Counterclaim and Counts IX and X, as they related to the Commercial Apartments, are arguably related to the determination of the parties' rights under the ROFR. However, the parties stipulated to diversity jurisdiction (Count V), and the Court found in favor of Plaintiff as to Counts IX and X, as they related to the Commercial Apartments. (<u>Id.</u> ¶¶ 10, 130–31.) The Court therefore finds that attorneys' fees and costs are not available for Counts III through X of the Counterclaim.

As to the claims for which attorneys' fees are available: Defendant prevailed in part and Plaintiff prevailed in part on Count I of the Second Amended

Complaint; Plaintiff prevailed on Count II of the Second Amended Complaint; Defendant prevailed on Count III of the Second Amended Complaint; Defendant prevailed on the remaining portion of Count I of the Counterclaim; and Defendant prevailed on Count II of the Counterclaim.  (Id. ¶¶ 123–25, 127–28.)  As noted, supra, the principle issues in this case were the recharacterization of the Limited Common Elements and whether Plaintiff had an option to purchase the Commercial Apartments.  These claims commanded the lion's share of the parties' attention and efforts throughout this litigation, and of the two main issues, the recharacterization of the Limited Common Elements was the primary issue in this case.

In consideration of all of these factors, and having viewed the work that defense counsel performed on this case in its entirety, this Court concludes that Defendant's fee request should be reduced by twenty percent to account for work done on the claims for which Defendant is not entitled to attorneys' fees and costs.

B.      Calculation of Fees under § 607-14

Hawaii courts calculate reasonable attorneys' fees based on a method that is virtually identical to the traditional "lodestar" calculation set forth in Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).  See DFS Grp. L.P. v. Paiea Props., 131 P.3d 500, 505 (Haw. 2006).  The court must determine a reasonable fee

by multiplying the number of hours reasonably expended by a reasonable hourly rate. See id. at 505–06. In addition, Hawaii courts may consider the following factors:

> (1) the time and labor required, the novelty and difficulty of the questions involved and the skill requisite properly to conduct the cause; (2) whether the acceptance of employment in the particular case will preclude the lawyer's appearance for others in cases likely to arise out of the transaction, and in which there is a reasonable expectation that otherwise he would be employed, or will involve the loss of other employment while employed in the particular case or antagonisms with other clients; (3) the customary charges of the Bar for similar services; (4) the amount involved in the controversy and the benefits resulting to the client from the services; (5) the contingency or the certainty of the compensation; and (6) the character of the employment, whether casual or for an established and constant client.

Chun v. Bd. of Trs. of Emps. Ret. Sys. of Haw., 106 P.3d 339, 358 (Haw. 2005) (citations omitted). These factors, however, are merely guides; courts need not consider them in every case. See id. In certain types of cases, some of these factors may justify applying a multiplier to the "lodestar" amount. See Chun v. Bd. of Trs. of Emps. Ret. Sys. of Haw., 992 P.2d 127, 137 (Haw. 2000).

Defendant requests the following lodestar amount for work performed in this case:

| ATTORNEY/STAFF | HOURS | RATE | LODESTAR |
|---|---|---|---|
| Bert Kobayashi, Jr. | 848.4 | $450 | $381,780.00 |
| Christopher Kobayashi | 416.7 | $250 | $104,175.00 |
| David Tongg | 1.2 | $250 | $ 300.00 |
| Joseph Stewart | 11.8 | $250 | $ 2,950.00 |
| John Lezak | 6.3 | $275 | $ 1,732.50 |
| Jonathan Moore | 1326.7 | $190 | $252,073.00 |
| Maria Wang | 28.7 | $170 | $ 4,879.00 |
| Nicholas Monlux | 307.3 | $150 | $ 46,095.00 |
| Ashley Ingersoll | 14.2 | $ 60 | $ 852.00 |
| Chris Santos | 183.1 | $120 | $ 21,972.00 |
| Corey Johnson | 27.1 | $ 70 | $ 1,897.00 |
| Gemma-Rose Poland | 4.1 | $125 | $ 512.50 |
| Heather Tom | 33.9 | $ 60 | $ 2,034.00 |
| J. Garrett Karr | 210.8 | $120 | $ 25,296.00 |
| Jennifer Besso | 229.5 | $100 | $ 22,950.00 |
| Kristin Imose | 11.2 | $ 60 | $ 672.00 |
| Mina Yu | 4.3 | $ 60 | $ 258.00 |
| Nick Monlux | 58.4 | $ 70 | $ 4,088.00 |
| Na Sil Heo | 22.2 | $ 60 | $ 1,332.00 |
| Patrick Branco | 9.8 | $ 60 | $ 588.00 |
| Tiare Nakata | 6.3 | $ 60 | $ 378.00 |
| | Subtotal | | $876,814.00 |
| | 4.712% state excise tax | | $ 41,315.48 |
| | **Total Requested Lodestar** | | **$918,129.48** |

(Mot. at 20; Mot. Ex. A at 1 (Itemization of Fees).)

Bert Kobayashi has been licensed to practice law in Hawaii for over forty years.[5]  He has been the head of the Kobayashi, Sugita & Goda ("KSG")

---

[5] Except as specifically stated hereafter, all references to an attorney's license to practice law refer to the attorney's admission to the Hawaii bar.  Where necessary, the Court has supplemented the information provided by counsel with information from the Hawaii State Bar Association's website.

litigation section since 1971.  (Kobayashi Decl. ¶ 2.)  Christopher Kobayashi has been practicing law in Hawaii since 1993.  (Id. ¶ 5.)  Mr. Tongg has been practicing law since 1996, and Mr. Lezak has been practicing law since 1969.  (Id. ¶¶ 7–8.)  Mr. Stewart has over eleven years of legal experience, having been admitted to the Hawaii bar in 1999.  Mr. Moore graduated from law school in 2007, and has been licensed to practice law since 2008.  (Id. ¶¶ 10–11.)  Ms. Wang has been licensed to practice law since 2007.  Mr. Monlux graduated from law school in 2009, but worked as a paralegal with KSG from November 2009 to June 2010.  He began working as an associate on June 11, 2010 after being admitted to the bar on June 10, 2010.  (Id. ¶¶ 13–14.)

Ms. Ingersoll is an undergraduate student who worked as a paralegal with KSG during the summer of 2010.  Mr. Santos graduated from law school in 2009 and was admitted to the bar in 2010.  He has worked as a law clerk with KSG since 2008.  Mr. Johnson is currently a graduate student who has been working as a paralegal with KSG during the summers since 2007.  Ms. Poland worked as a law clerk with KSG during the summer of 2009.  She graduated from law school and was admitted to practice in 2010.  Heather Tom has been a paralegal with KSG since 2008.  (Id. ¶¶ 16–20.)  Mr. Karr has been a paralegal with KSG for over fifteen years, and he has assisted with over twenty trials.  Ms. Besso is a law school

graduate with over five years of paralegal experience. Ms. Imose has been a part-time paralegal with KSG since 2007, and Ms. Yu has been a paralegal with KSG since 2009. Ms. Heo and Mr. Branco worked as paralegals with KSG from 2008 and 2010, respectively. Ms. Nakata is a law student who worked as a paralegal with KSG during the summer of 2010. (Id. ¶¶ 21–27.)

### 1. Reasonable Hourly Rate

Hawaii courts determine reasonable hourly rates in a manner virtually identical to the traditional lodestar formulation, and some courts have considered federal law in determining a reasonable hourly rate. See, e.g., Reiche v. Ferrera, 2003 WL 139608, at *8 (Haw. Ct. App. Jan. 16, 2003) ("The reasonable hourly rate is that prevailing in the community for similar work." (citing United States v. Metro. Dist. Comm'n, 847 F.2d 12, 19 (1st Cir. 1988)). But see DFS Grp., 131 P.3d at 506 (determining a reasonable hourly rate by calculating the average of the four requested rates). Federal case law on the determination of a reasonable hourly rate is instructive in the instant case.

In determining whether an hourly rate is reasonable, the Court considers the experience, skill, and reputation of the attorney requesting fees. See Webb v. Ada Cnty., 285 F.3d 829, 840 & n.6 (9th Cir. 2002). The reasonable hourly rate should reflect the prevailing market rates in the community. See id.;

see also Gates v. Deukmejian, 987 F.2d 1392, 1405 (9th Cir. 1992), as amended on denial of reh'g, (9th Cir. 1993) (noting that the rate awarded should reflect "the rates of attorneys practicing in the forum district").

In addition to their own statements, attorneys are required to submit additional evidence that the rates charged are reasonable. See Jordan v. Multnomah Cnty., 815 F.2d 1258, 1263 (9th Cir. 1987). In support of its position that KSG's hourly rates are reasonable, Defendant submitted a list that the Pacific Business News published on May 29, 2009 of the largest law firms in Honolulu. (Mot. Ex. B.) Bert Kobayashi notes that eleven out of the top sixteen firms reported their hourly rates and that the rates for associates range from $125 per hour to $300 per hour. The rates for partners range from $145 per hour to $500 per hour. (Kobayashi Decl. ¶ 29.) He argues that "all the attorneys and paralegals/law clerks working on this case are at or below the prevailing rates for like work in the Honolulu, Hawaii community." (Id.)

In JJCO, Inc. v. Isuzu Motors America, LLC, et al., U.S. District Judge Leslie E. Kobayashi determined reasonable hourly rates for many of the KSG attorneys and staff who also worked on the instant case.[6] 2010 WL 3001924,

_____

[6] Judge Kobayashi made this determination in the form of a findings and recommendation while she was a U.S. Magistrate Judge. Chief U.S. District Judge
(continued...)

at *10–*11 (D. Haw. July 30, 2010). The award in <u>JJCO</u> is instructive in the instant case, not only because both cases involve KSG, but also because the cases are comparable in complexity and procedural posture. The Court also notes that Judge Kobayashi issued two orders awarding attorneys' fees to Plaintiff's counsel as discovery sanctions in the instant case. (Docs. ## 126, 376.) In addition, this Court is familiar with the prevailing rates in the community for similar services performed by attorneys of comparable experience, skill, and reputation, and the Court is familiar with other prior attorneys' fee awards in this district.

Based on the foregoing, the Court finds that the requested hourly rates for Mr. Bert Kobayashi, Mr. Stewart, Mr. Moore, Ms. Wang, Mr. Karr, Ms. Heo, and Mr. Monlux, in his capacity as a paralegal, are excessive. The Court determines that the rates awarded in <u>JJCO</u> are reasonable hourly rates. These hourly rates are: Mr. Bert Kobayashi—$350; Mr. Stewart—$185; Mr.

---

[6](...continued)
Susan Oki Mollway adopted the findings and recommendation in part and modified them in part. Judge Mollway specifically adopted the findings regarding reasonable hours and hourly rates. <u>JJCO, Inc. v. Isuzu Motors Am., Inc.</u>, 2010 WL 4272980, at *7 (D. Haw. Oct. 21, 2010).

Moore—$130; Ms. Wang—$130; Mr. Karr—$85;[7] Ms. Heo—$50; and Mr.

Monlux, in his capacity as a paralegal—$70.

The Court concludes that Mr. Lezak's requested hourly rate of $275 is

manifestly reasonable and is consistent with the rate that Judge Kobayashi awarded

Plaintiff's counsel, Kenneth Marcus, in this case. (Doc. # 126 at 5–6.)

Insofar as Defendant requests the same hourly rate for Chris

Kobayashi and Mr. Tongg as it requests for Mr. Stewart, this Court also concludes

that $185 is a reasonable hourly rate for Chris Kobayashi and Mr. Tongg.

Comparing Mr. Monlux's requested rate for his work as an associate to the

reasonable hourly rates for Mr. Moore and Ms. Wang, this Court finds that Mr.

Monlux's requested rate of $150 per hour is excessive. A reasonable hourly rate

for Mr. Monlux's work as an associate is $120 per hour.

The requested hourly rates of $120 for Mr. Santos and $125 for Ms.

Poland are also excessive. Law students are typically awarded $100 per hour for

their work. See, e.g., Blake v. Nishimura, 2010 WL 1372420, at *6 (D. Haw. Mar.

31, 2010) (reducing law student's rate from $125 to $100). The Court therefore

---

[7] The reasonable hourly rates for Mr. Moore and Ms. Wang are comparable to the rate that Judge Kobayashi awarded to Plaintiff's counsel Shyla Cockett. The reasonable hourly rate for Mr. Karr is comparable to the rate that Judge Kobayashi awarded to Diana Doura Puaatuua. (Doc. # 126 at 7–8.)

26

concludes that $100 per hour is a reasonable hourly rate for both Mr. Santos and Ms. Poland. The Court notes that Ms. Besso is a law school graduate, but she only worked on this case in a paralegal capacity. (Kobayashi Decl. ¶ 22.) Her hourly rate should be comparable to Mr. Karr's, who is not a law school graduate, but who has approximately ten more years of paralegal experience than Ms. Besso. The Court therefore finds that a reasonable hourly rate for Ms. Besso is $85 per hour.

Mr. Johnson's and Mr. Monlux's paralegal qualifications are comparable. The Court therefore finds that, consistent with the reasonable hourly rate that this Court has approved for Mr. Monlux's paralegal work, Mr. Johnson's requested hourly rate of $70 per hour is manifestly reasonable. As to Ms. Ingersoll, Ms. Tom, Ms. Imose, Ms. Yu, Ms. Heo, Mr. Branco, and Ms. Nakata, the Court finds that their paralegal qualifications are comparable and the Court notes that Defendant requests the same hourly rate, $60, for each of them. The Court finds that this rate is excessive and that a reasonable hourly rate for Ms. Ingersoll, Ms. Tom, Ms. Imose, Ms. Yu, Mr. Branco, and Ms. Nakata is $50 per hour, the hourly rate previously awarded to Ms. Heo.

2.    Hours Reasonably Expended

For the reasons stated in Section I.D.1., this Court finds federal case law instructive on the issue of the reasonable number of hours expended on the instant case. Beyond establishing a reasonable hourly rate, a party seeking attorneys' fees bears the burden of proving that the fees and costs taxed are associated with the relief requested and are reasonably necessary to achieve the results obtained. See Tirona v. State Farm Mut. Auto. Ins. Co., 821 F. Supp. 632, 636 (D. Haw. 1993) (citations omitted). A court must guard against awarding fees and costs which are excessive, and must determine which fees and costs were self-imposed and avoidable. See id. at 637 (citing INVST Fin. Grp. v. Chem-Nuclear Sys., 815 F.2d 391, 404 (6th Cir. 1987)). A court has "discretion to 'trim fat' from, or otherwise reduce, the number of hours claimed to have been spent on the case." Soler v. G & U, Inc., 801 F. Supp. 1056, 1060 (S.D.N.Y. 1992) (citation omitted). Time expended on work deemed "'excessive, redundant, or otherwise unnecessary'" will not be compensated. See Gates, 987 F.2d at 1399 (quoting Hensley, 461 U.S. at 433–34).

a.    Block Billing

Plaintiff argues that this Court should reduce defense counsel's hours for block billing. "The term 'block billing' refers to the time-keeping method by

which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks." Robinson v. City of Edmond, 160 F.3d 1275, 1284 n.9 (10th Cir. 1998) (citations and quotation marks omitted). Here, the Itemization of Fees contains some instances of block billing, but the vast majority of the daily entries are broken down by the number of hours that the time keeper spent on each task. Viewing defense counsel's request as a whole, the limited instances of block billing do not prevent the Court from evaluating the reasonableness of the hours expended. The Court therefore declines to apply a percentage reduction for block billing. Where the Court was not able to determine precisely how many hours a time keeper spent on a particular task, the Court estimated the amount of time attributable to that task based upon the number of entries noted on that day, the total amount of time billed for that day, and the time billed for other similar tasks. Although this may result in an under-estimation of the amount of time that defense counsel spent on a particular task, this is the burden counsel must bear for using block billing. Additionally, KSG has already been told to avoid this practice because it prevents the Court from reviewing the reasonableness of the time spent on each task. JJCO, 2010 WL 3001924, at *12.

b.      Clerical or Ministerial Tasks

Plaintiff argues that the Court should reduce defense counsel's time for administrative or clerical tasks.  Such tasks are not compensable because "[c]lerical or ministerial costs are part of an attorney's overhead and are reflected in the charged hourly rate."  Id. (citations and quotation marks omitted).  The following are all non-compensable clerical or ministerial tasks: filing court documents or confirming that court documents have been filed; organizing and maintaining files and binders for intra-office use; delivering or transmitting documents; preparing memoranda for office files; driving attorneys to and from the airport; bates stamping and other labeling documents; organizing documents for production; coordinating service of documents; and formatting or printing documents.  The Court will therefore make the following deductions for clerical or ministerial tasks: Mr. Moore—7.0 hours; Mr. Chris Kobayashi—2.0 hours; Mr. Monlux's attorney time—1.0 hour; Ms. Ingersoll—2.0 hours; Mr. Santos—1.2 hours; Mr. Johnson—27.1 hours; Ms. Tom—33.9 hours; Mr. Karr—87.6 hours; Ms. Besso—186.5 hours; Ms. Imose—2.9 hours; Ms. Yu—1.9 hours; Mr. Monlux's paralegal time—2.7 hours; Ms. Heo—7.8 hours; Mr. Branco—6.0 hours; and Ms. Nakata—6.3 hours.

c.     Excessive or Duplicative Time

Plaintiff also argues that this Court should reduce counsel's hours because Defendant had numerous attorneys whose work was duplicative and excessive.

> As a general rule, this Court allows two attorneys to bill for their appearances at court proceedings when it is reasonable and necessary for a "second-chair" to appear with lead counsel. The Court, however, does not allow more than one attorney to bill for attending: 1) a meeting between co-counsel; 2) a client meeting; or 3) a meeting with opposing counsel. This Court generally deducts the time spent by the lowest-billing attorney or attorneys.

Nat'l Comm'n for Certification of Crane Operators v. Ventula, 2010 WL 2179505, at *5 (D. Haw. Apr. 30, 2010) (citation omitted).[8] Here, there were some instances of duplicative billing for attendance at the same meetings and depositions, and there was also some duplicative review of the same court orders and correspondence. The Court will deduct those hours from counsel's time. Plaintiff cited numerous instances of duplicative research, but it is not uncommon for more than one attorney to conduct research for the same issue or motion. To the extent that some of the research may have been unnecessary, the Court will account for that fact in its reduction for excessive billing. The Court will therefore deduct 7.0

---

[8] This citation refers to the magistrate judge's report of special master, which the district judge adopted. Ventula, 2010 WL 2176098 (D. Haw. May 25, 2010).

hours from Mr. Moore's time, 2.0 hours from Mr. Chris Kobayashi's time, 2.7 hours from Mr. Santos's time, and 8.0 hours from Mr. Karr's time, for duplicative billing.

Having reviewed all of the time entries, this Court finds Mr. Moore's time to be excessive and will reduce his hours by 100.0. The Court also finds Mr. Santos's time for preparing summaries for use during trial to be excessive and will reduce his hours by 10.0.

d.    Travel

Plaintiff argues that defense counsel's time to travel to the mainland states for hearings or depositions is not compensable. "This Court typically allows counsel to claim reasonable travel time for case-related travel to and from the other islands or the mainland. . . ." Phoenician, LLC v. Vessel Kapalua Kai, 2010 WL 2177030, at *8 (D. Haw. May 26, 2010) (citation and quotation marks omitted).[9] Defense counsel's travel time in this case was necessary and reasonable and is therefore compensable.

---

[9] The citation refers to the magistrate judge's findings and recommendation regarding the plaintiff's motion for default judgment. The district judge adopted the findings and recommendation. Phoenician, 2010 WL 2608334 (D. Haw. June 25, 2010).

### e. Other Non-Compensable Entries

Both Mr. Bert Kobayashi and Mr. Moore billed time for working on a litigation plan and budget. Although such a document may be useful, it is primarily for the convenience of counsel and the client and is not reasonably necessary to the litigation of a case. The Court will therefore exclude 9.0 hours from Mr. Bert Kobayashi's time and 5.0 hours from Mr. Moore's time.

Similarly, Bert Kobayashi billed a significant amount of time preparing what appear to be detailed status and strategy reports for the client, particularly in the month of March 2010. Although updating the client about the status of a case is necessary, the amount of time spent on this task was excessive. The Court will therefore reduce Bert Kobayashi's time by 15.0 hours for this task.

Mr. Monlux also billed a significant amount of time on tasks associated with the appeal to the Ninth Circuit, including motions brought in this Court regarding the appeal. Such time is not compensable because it was not necessary to the merits of the claims. The Court will therefore deduct 33.0 hours from Mr. Monlux's time for work on the appeal.

Counsel also billed time for issues that appear to be completely unrelated to this action, in particular, a bar lease and a Serengeti system. The

Court will therefore reduce Mr. Bert Kobayashi's time by 6.5 hours and Mr. Moore's time by 1.1 hours.

Any other necessary reductions are encompassed within the Court's twenty percent reduction for claims for which attorneys' fees are not available or for which Defendant did not prevail. The Court finds that the remainder of counsel's time was necessary and reasonable in this case.

C.    Total Lodestar Award

Based on the foregoing, the Court concludes that Defendant has established the appropriateness of an award of attorneys' fees as follows:

| ATTORNEY/STAFF | HOURS | RATE | LODESTAR |
|---|---|---|---|
| Bert Kobayashi, Jr. | 817.9 | $350 | $286,265.00 |
| Christopher Kobayashi | 412.7 | $185 | $ 76,349.50 |
| David Tongg | 1.2 | $185 | $      222.00 |
| Joseph Stewart | 11.8 | $185 | $   2,183.00 |
| John Lezak | 6.3 | $275 | $   1,732.50 |
| Jonathan Moore | 1206.6 | $130 | $156,858.00 |
| Maria Wang | 28.7 | $130 | $   3,731.00 |
| Nicholas Monlux | 273.3 | $120 | $ 32,796.00 |
| Ashley Ingersoll | 12.2 | $ 50 | $      610.00 |
| Chris Santos | 169.2 | $100 | $ 16,920.00 |
| Corey Johnson | 0.0 | $ 70 | $        0.00 |
| Gemma-Rose Poland | 4.1 | $100 | $      410.00 |
| Heather Tom | 0.0 | $ 50 | $        0.00 |
| J. Garrett Karr | 115.2 | $ 85 | $   9,792.00 |
| Jennifer Besso | 43.0 | $ 85 | $   3,655.00 |
| Kristin Imose | 8.3 | $ 50 | $      415.00 |
| Mina Yu | 2.4 | $ 50 | $      120.00 |
| Nick Monlux | 55.7 | $ 70 | $   3,899.00 |

| | | | |
|---|---|---|---|
| Na Sil Heo | 14.4 | $ 50 | $ 720.00 |
| Patrick Branco | 3.8 | $ 50 | $ 190.00 |
| Tiare Nakata | 0.0 | $ 50 | $ 0.00 |
| | | Subtotal | $596,868.00 |
| | | 4.712% state excise tax | $ 28,124.42 |
| | | Total Lodestar | $624,992.42 |
| | | 20% Reduction | - $124,998.48 |
| | | **Total** | **$499,993.94** |

The Court finds it unnecessary to adjust the award amount based on the factors

articulated in <u>Chun</u>. <u>See</u> 106 P.3d at 358.

      D. <u>Twenty-Five Percent Limitation</u>

      Section 607-14 limits the award of attorneys' fees to twenty-five

percent of the judgment. The fee award is "assessed . . . upon the amount sued for

if the defendant obtains judgment." Haw. Rev. Stat. § 607-14. The Hawaii

Supreme Court has stated:

>       Although the language of HRS § 607-14 appears to
> unequivocally limit an award of attorneys' fees to twenty-five per cent
> of the judgment, we have previously concluded that the twenty-five
> per cent limit does not apply in cases that involve "only an
> adjudication of rights in which no monetary liability is in issue."
> <u>Food Pantry, Ltd. v. Waikiki Bus. Plaza, Inc.</u>, 58 Haw. 606, 621, 575
> P.2d 869, 880 (1978). Furthermore, in <u>Piedvache v. Knabusch</u>, 88
> Hawai'i 115, 119, 962 P.2d 374, 378 (1998) (emphasis added), we
> recognized that "where it is impossible to determine what the
> judgment would or might have been . . . (e.g., in declaratory judgment
> actions ), the [prevailing party] may be awarded all of his or her
> reasonable attorney's fees." <u>See also</u> <u>Amfac, Inc. v. Waikiki</u>
> <u>Beachcomber Inv. Co.</u>, 74 Haw. 85, 132–33, 839 P.2d 10, 34–35
> (1992) ("[I]f no money damages are sought or awarded, as in a

complaint for declaratory judgment, there is no monetary amount on the basis of which to calculate the twenty-five percent statutory ceiling for attorneys' fees") (emphasis added).

DFS Grp. L.P. v. Paiea Props., 131 P.3d 500, 504 (Haw. 2006).

At trial, Plaintiff did not seek damages under the ROFR; it only sought declaratory and injunctive relief. (FFCL ¶¶ 23, 25.) Further, as noted supra, the claim for which Plaintiff sought damages in the Second Amended Complaint was not a claim for which Defendant can obtain attorneys' fees. The claims to enforce the parties' rights under their agreements, for which the prevailing party is entitled to recover attorneys' fees under the terms of the agreements, involved only an adjudication of rights in which no monetary liability was at issue. This Court therefore finds that the twenty-five percent limit on the award of attorneys' fees does not apply in this case.

II.     Costs under § 607-14

Although Haw. Rev. Stat. § 607-14 does not expressly authorize an award of costs in addition to attorneys' fees, Hawaii courts award costs pursuant to § 607-14. See, e.g., Fought & Co., Inc. v. Steel Eng'g & Erection, Inc., 951 P.2d 487, 502 (Haw. 1998) (noting that appellate courts have jurisdiction to award attorneys' fees and costs on appeal pursuant to § 607-14). Further, paragraph 6 of the ROFR expressly provides for "reasonable attorneys' fees and costs of

litigation." This Court therefore finds that, as the prevailing party in this action,

Defendant is entitled to its reasonable costs of litigation.[10] This award, however, is

also subject to the twenty percent reduction applied to the award of attorneys' fees.

Defendant seeks the following non-taxable costs:

| | |
|---|---|
| Long Distance Fax Expenses | $ 6.64 |
| Notary Fees | $ 10.00 |
| Office Supplies | $ 1,448.72 |
| Mediation Fees | $ 2,292.47 |
| Travel Expenses | $10,088.05 |
| Photocopying Fees | $ 3,495.48 |
| Online Legal Research | $ 9,094.38 |
| | **Total $26,435.74** |

(Kobayashi Decl., Ex. C at 2–4.) Plaintiff argues that Defendant is not entitled to

recover its overhead expenses or other costs that are not allowable by statute,

including online research fees, office supplies, mediation fees, and meals. (Opp'n

at 28–30 (citing Kikuchi v. Brown, 130 P.3d 1069, 1077, 1078 (Haw. App. 2006);

DFS Grp. L.P. v. Paiea Props., 131 P.3d 500, 507–08 (Haw. 2006); Sea Coast

Foods, Inc. v. Lu-Mar Lobster & Shrimp, Inc., 260 F.3d 1054, 1061 (9th Cir.

2001); Wong v. Takeuchi, 961 P.2d 611, 619 (Haw. 1998)) (some citations

omitted).) Plaintiff's reliance on Kikuchi is misplaced because that case addressed

an award of taxable costs pursuant to Haw. R. Civ. P. 54(d). 130 P.3d 1069,

---

[10] This award is in addition to any taxable costs awarded to Defendant
pursuant to Fed. R. Civ. P. 54(d)(1).

1075–76.  Similarly, <u>Wong</u> is limited to awards of costs pursuant to Haw. R. Civ.

P. 54(d) and Haw. Rev. Stat. § 607-9.  961 P.2d 611, 619 n.7.  Plaintiff's reliance

on <u>Sea Coast Foods</u> is also misplaced because it addressed costs under 28 U.S.C. §

1920.  260 F.3d at 1061.

In <u>DFS</u>, the Hawaii Supreme Court expressly held that

"computer-assisted research charges are subsumed within a law firm's overhead

and therefore the client may not recover such costs by classifying them as

separately billed attorneys' fees."  131 P.3d 500, 508.  As in the instant case, the

prevailing party in <u>DFS</u> was entitled to attorneys' fees and costs pursuant to § 607-

14 and contractual provisions allowing for such an award.  <u>Id.</u> at 502–03.  Pursuant

to <u>DFS</u>, Defendant's requested online legal research fees must be subsumed in

KSG's overhead and cannot be recovered as costs separate from KSG's attorneys'

fees.  The Court therefore concludes that Defendant's request for $9,094.38 in

online legal research fees is not compensable.

Other than <u>DFS</u>, Plaintiff has not identified any applicable case law

that would limit the award of Defendant's costs.  The ROFR only requires that the

costs be reasonable in an action to enforce the ROFR.  The Court finds that

Defendant's long distance fax expenses, notary fees, and mediation fees are

reasonably necessary and compensable in this case.

Defendant seeks $1,448.72 for office supplies consisting of binders for arbitration and trial, electronic flash drives for trial exhibits, and a laser pen for use during trial. (Kobayashi Decl., Exh. C at 2.) These items were for the use and convenience of defense counsel, but were not reasonably necessary to litigate this action. The Court therefore finds that Defendant's request for $1,448.72 in office supplies is not compensable.

Defendant seeks $10,088.05 in travel expenses for various depositions and a hearing before the Court in the District of Nevada. (Id. at 3.) All of these expenses were necessary and reasonable, with the exception of a $930.15 airfare change fee for Bert Kobayashi's trip to Dallas for the deposition of Tom Eller. Defendant submitted a supporting Cost Advance/Check Request form, (id. at 25), but the form does not explain the reason for the change. The Court therefore cannot determine whether the change fee was reasonably necessary to the case or was merely for counsel's preference or convenience. The Court finds that $930.15 of Defendant's travel expenses is not compensable, but the remaining $9,157.90 is compensable.

Finally, Defendant seeks $3,495.48 in unspecified photocopying expenses throughout the litigation. (Id. at 4.) The Court notes that Defendant sought $5,039.10 in copying costs in its Bill of Costs, filed November 29, 2010

(Doc. # 413). In order to establish an entitlement to the taxation of those costs, Defendant had to meet the stringent requirements of Local Rule 54.2(f)(4). Presumably, Defendant included its request for $3,495.48 in unspecified copying costs in the instant motion because it could not meet the requirements of Local Rule 54.2(f)(4). The parties in the instant case, however, have previously been informed that "[a]lthough Local Rule 54.2 applies to the taxation of costs, this Court generally applies the requirements of Local Rule 54.2(f)(4) to all requests for copying costs." (Doc. # 126 at 14.) Insofar as the instant request for copying costs does not comply with Local Rule 54.2(f)(4), the Court determines that Defendant's request for $3,495.48 in copying costs is not compensable.

In sum, Defendant has established an entitlement to the following costs:

| | | |
|---|---|---|
| Long Distance Fax Expenses | $ | 6.64 |
| Notary Fees | $ | 10.00 |
| Mediation Fees | $ | 2,292.47 |
| Travel Expenses | $ | 9,157.90 |
| | Total | $11,467.01 |

As with Defendant's award of attorneys' fees, the Court will reduce this amount by twenty percent ($2,293.40) to account for the costs attributable to the claims for which non-taxable costs are not available and the claims for which Defendant did

not prevail.  The Court therefore finds that Defendant is entitled to an award of

$9,173.61 in non-taxable costs.

CONCLUSION

In accordance with the foregoing, this Court GRANTS IN PART and

DENIES IN PART Defendant's Motion for Attorneys' Fees and Related Non-

taxable Expenses.  (Doc. # 414.)  The Court AWARDS Defendant $499,993.94 in

attorneys' fees and $9,173.61 in costs, for a total award of $509,167.55.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, March 29, 2011.

_____
David Alan Ezra
United States District Judge

Ko Olina Development, LLC v. Centex Homes, et al., Cv. No. 09-00272 DAE-
LEK; ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR ATTORNEYS' FEES AND RELATED NON-
TAXABLE EXPENSES